# Owen *v.* The State.

*Indictment for Burglary.*

1. *Admissibility of confessions.*—Before confessions can go to the jury as evidence in a criminal case, it must be shown to the satisfaction of the court that they were made voluntarily. Any words spoken in the hearing of the defendant while in custody, which might generate hope or fear on his part, are sufficient to exclude his confessions thereby induced; and when a confession has been thus improperly obtained, any subsequent repetition of it must also be excluded, unless it is affirmatively shown that the effect of the improper influence had been entirely removed. Under these rules, as applied to the facts shown in this case, the defendant's confessions ought not to have been admitted.

2. *Husband and wife, as witnesses against each other.*—On principles of public policy, all communications between husband and wife which

do not on their face appear to be public, or intended to be so, are shielded from public scrutiny as evidence, and neither can testify as to such communications when the interests of the other are involved; and in criminal cases, the subsequent dissolution of the marriage relation, by decree of divorce, does not affect the principle, nor remove the incompetency.

FROM the Circuit Court of Lawrence.

Tried before the Hon. H. C. SPEAKE.

The indictment in this case charged that the defendant, Abner Owen, "with intent to steal, broke into and entered a store-house, the property of Reason Young, in which goods, wares and merchandise were at the time kept, for use, deposit, or sale." On the trial, as the bill of exceptions shows, issue being joined on the plea of not guilty, Reason Young, the owner of the house broken into, testified to the condition in which he found his store at daylight in the morning after the burglary; also, that goods had been stolen from the store, and about $260 in money taken from his safe. The burglary was committed in October, 1883, and the defendant was arrested, charged with the offense, in October, 1884, on the premises of Mr. Ben Owen, where he lived. The arrest was made by said Reason Young, Ben Owen, and one Henry Jones, by whom he was tied, and delivered into the custody of J. W. Robertson as special constable. Said Robertson was examined as a witness for the prosecution, and testified to confessions made to him by the defendant while on the road to the jail, in substance as follows: "He said he was thinking about what trouble the boys had got into in breaking into Mr. Young's store; that he, Tom Owen, Jack Armor, and Bill Warren were into it, and were led by a white man named John Howard, or Jim Reid; that they broke into the store with a hammer and sledge, and got into the safe in the store, and took the safe off, and burst it open, and took out $260 in money." The witness stated, "that he offered no inducements, and made no threats to get defendant to make said statements, but that he made them voluntarily, freely, and of his own accord;" but he further stated, on cross-examination, "that while the defendant was under guard, when witness entered the room, Joe Young (the son of Reason Young) and Henry Jones stated, in the presence of the defendant, that it would go lighter with him, if he would confess and tell all about it; that said Joe Young further stated to witness, in the presence and hearing of the defendant, that Reason Young and Ben Owen had told him to tell defendant, that if he would confess and tell on all the others who were engaged in it, his father would turn him loose, and would make a State's witness of him; and witness then told defendant, that said Young and Owen would do

[Owen v. The State.]

what they promised; but he denied his guilt, and said he knew nothing about it." Other witnesses also testified to these promises, or statements, made by said Young and Owen. Other confessions were made by the defendant, some eight or ten days later, to the jailer and also to Mr. Joe Young, while he was in jail; but the jailer testified, that the statements made to him, at different times, by the defendant, were contradictory, he sometimes denying his guilt altogether. On the evidence adduced relating to the confessions, the defendant moved the court to exclude them as evidence; and he duly excepted to the overruling of his objections and motion.

The State afterwards introduced Celia Owen as a witness, who was the wife of the defendant at the time of the burglary, but had been divorced from him by a decree of the Chancery Court rendered on the 3d April, 1884. The defendant objected to her competency as a witness, and excepted to the overruling of his objection. The witness testified, that the defendant was out very late the night of the burglary, but brought nothing with him on his return; that she afterwards saw him with $50 or $60 in money, and counted it for him; that he went to Leighton about Christmas, and bought clothes for himself, a mattress, bed-clothes, &c.; and that all this occurred while they were living together as man and wife, and before the decree of divorce was rendered. The defendant objected to each part of this evidence, and excepted to the overruling of his objections.

W. P. Chitwood, and Jas. Jackson, for the appellant. (1.) The confessions of the defendant ought not to have been admitted as evidence against him.—*Seaborn v. The State*, 20 Ala. 15; *Brister v. The State*, 26 Ala. 107; *Franklin v. The State*, 28 Ala. 9; *Sampson v. The State*, 54 Ala. 213; *Bonner v. The State*, 55 Ala. 242; 32 Ala. 560; 36 Ala. 211; 39 Ala. 359; 11 Ala. 57; 1 Greenl. Ev. § 219. (2.) Celia Owen was not competent to testify as a witness against the defendant. *Woods v. The State*, 76 Ala. 35; 3 Greenl. Ev. §§ 335–37.

Thos. N. McClellan, Attorney-General, and Thos. M. Peters, *contra*, cited Archb. Cr. Pl. 109; 1 Phil. Ev. 401, 408; 1 Greenl. Ev. §§ 219, 220; *Aaron v. The State*, 37 Ala. 106; *Caroline v. The State*, 23 Ala. 28; *King v. The State*, 40 Ala. 314; *Clarissa v. The State*, 11 Ala. 57; *Wyatt v. The State*, 25 Ala. 9; *Joe v. The State*, 38 Ala. 422; *Mose v. The State*, 36 Ala. 211; *Aikin v. The State*, 35 Ala. 339; *Bob v. The State*, 32 Ala. 560.

STONE, C. J.—The rule is clearly settled in Alabama, as elsewhere, that confessions can not be given in evidence against a person charged with crime, until they are first shown to the satisfaction of the court to have been voluntarily made. Any, the slightest menace, or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with, if he will confess—either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner, which may, in their nature, generate such fear or hope, render it not only proper but necessary that confessions made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made, after all trace of hope or fear had been fully withdrawn, or explained away, and the mind of the prisoner made as free from bias and intimidation as if no attempt had ever been made to obtain such confessions. And when a confession has been once obtained after appliances of hope or fear, any subsequent confession must alike be excluded, until the prisoner's mind is fully and clearly disabused in the manner suggested above, and until it is fairly explained to him that the confession previously made can not harm him, nor be given in evidence against him. Less than an entire obliteration of all ground of hope or fear previously engendered will not meet the severe requirements of the law; and trial judges could not well be too strict in the enforcement of this rule. We need not elaborate this doctrine. It has been so fully declared, that further comment is unnecessary.—*Porter v. The State*, 55 Ala. 95; *Brister v. The State*, 26 Ala. 107; 2 Lead. Cr. Cas. 113; *Redd v. The State*, 69 Ala. 255; *Kelly v. The State*, 72 Ala. 244; 1 Greenl. Ev. § 214. Under these rules, all the confessions of the prisoner proved against him were improperly admitted.

Between the time of the alleged commission of the offense and the trial in the Circuit Court, the prisoner and his wife, Celia Owen, were divorced, the one from the other. She was offered as a witness against defendant; her competency was objected to, the objections overruled, and she was allowed to testify. Her testimony did not disclose any conversations she had had with the prisoner, nor any declarations made by him. It related to conduct of the prisoner on the night of the alleged burglary, and afterwards—all during the time they were living together as husband and wife. Some of her statements relate to conduct of his, which would not likely have come to her knowledge in its details, if they had not been husband and wife. As to other portions of her statements, they came to her knowledge merely by the circumstance of her presence, and do not appear to have resulted from the relation she sus-

[Owen v. The State.]

tained to him, farther than that relation caused or contributed to her presence at the time and place of their occurrence.

There is a well defined rule of law, that any transaction or communication between husband and wife, which does not on its face appear to have been intended to be public, or to become so, is shielded by the sacredness of the relation from the public eye; and neither is a competent witness to testify as to such transaction or communication, when the interests of the other are involved. This rule rests on the ground of public policy, and stands unchanged, even after the marriage relation is dissolved by the death of one of the parties, or by judicial sentence. When, however, the conduct or transaction is in no sense traceable to their relation of husband and wife and the confidence it inspires, but in its nature is as likely to have occurred before the public as in private, there are authorities which hold that, after the marriage is dissolved, the parties, or survivor, as the case may be, are competent, in civil cases, to testify for and against each other.—*Beveridge v. Minter*, 1 Car. & P. 364; s. c., 11 Eng. C. L. 421; *Edgell v. Bennett*, 7 Vt. 534; *Wottrich v. Freeman*, 71 N. Y. 601; *Coffin v. Jones*, 13 Pick. 441; *Patton v. Wilson*, 2 Lea (Tenn.), 101, 112; *Stanford v. Murphy*, 63 Ga. 410; *Brown v. Wood* (on statute), 121 Mass. 137; *Westerman v. Westerman* (on statute), 25 O. St. 500. See, also, *Aveson v. Ld. Kinnard*, 6 East, 132; *Raynes v. Bennett*, 114 Mass. 434.

The following cases are variant from the foregoing: *Stein v. Bowman*, 13 Pet. 209; *Robin v. King*, 2 Leigh, 140; *Terry v. Belcher*, Bailey, S. C. 568; *Barnes v. Camack*, 1 Barbour, 392; *Succession of Anne*, 33 La. An. 1317; *Doker v. Hasler*, Ryan & Moody, 198; s. c., 21 Eng. C. L. 416. Consult, also, the following authorities: *Woods v. State*, 76 Ala. 35; 1 Greenl. Ev. §§ 254, 334, 335, 337; Whart. Cr. Ev. § 400. This rule, as applicable to civil cases, is laid down in *Gordon v. Tweedy*, 71 Ala. 202.

In the case of *The State v. Jolly*, 3 Dev. & Bat. Law, 110, the doctrine was considered in reference to a State prosecution; and it was held that the husband, though divorced from his wife, was incompetent to prove criminal conduct on the wife's part. No question of confidence, growing out of the marriage relation, appears to have been presented in that case. It was rested on general principles of public policy.

In favor of the North Carolina decision, and of the doctrine of absolute exclusion in State prosecutions, we can well imagine that very embarrassing questions might arise on cross-examination, which would necessarily result in eliciting only garbled statements of fact, or of tearing away the veil, which

hides from public gaze the sacred confidences which subsist between husband and wife. The testimony should not have been admitted.

Reversed and remanded.

