BOWEN W. SIMMONS, Supernumerary Circuit Judge.
Pursuant to an indictment for arson in the first degree (burning a dwelling house) a jury convicted appellant-defendant as charged and the court fixed punishment at fifteen years imprisonment. Appellant-defendant, an indigent, appeals.
This is a second judgment of conviction under the indictment. A prior judgment was reversed and the cause remanded. Arnold v. State, 54 Ala.App. 542, 310 So.2d 262 (1975).
Appellant, a registered pharmacist, had bought a drug store business from Mrs. Lula Hooks, agreeing to pay therefor at future intervals. In some way Mrs. Hooks and defendant had become estranged about the operation of the business. This estrangement led to the arson charges against appellant.
The evidence shows an arson indictment for burning the dwelling and conviction of Felix Washington, a black, and one or two others. Mrs. Hooks’ dwelling house was set on fire one night by a fire-bomb, thrown from the outside against the dwelling, thereby causing fire damage.
Four blacks left the scene hurriedly in an automobile, but were intercepted by an officer in a police patrol car. Three of the blacks fled from the automobile, while Felix Washington was not so fortunate. At least one of the fleeing suspects was later apprehended, convicted of arson with respect to the Hooks’ dwelling.
*522 Felix Washington was also convicted and thereafter, in the first trial and in this trial was used by the State to testify against appellant-defendant. In the instant trial he was put on the stand as the Court’s witness and as such witness, he implicated defendant.
According to Washington’s testimony, defendant Arnold employed him (and the others) to set fire to Mrs. Hooks’ home, which they did by use of a fire bomb. Defendant paid him $200.00 to do the job and agreed to pay more at a later date. This amount was never paid. According to Washington’s testimony appellant, Arnold, was an accomplice and a statutory principal. Title 14, Sec. 14, Recompiled Code, 1940.
But Washington’s testimony against appellant was supported by only one witness, the divorced wife of appellant-defendant. It was necessary that Washington’s evidence be supported by a corroborating witness. Title 15, Sec. 307, Recompiled Code, 1940.
A motion to suppress, and an appropriate objection to the divorced wife’s testimony and to exclude it were all overruled and her testimony was allowed to go to the jury. The admissibility of this testimony is an issue of serious import now before this Court.
Mrs. Arnold testified, over defendant’s objection and motion to suppress, both being overruled, that while in their home on the night the arson was committed; that her husband received a telephone call and she heard her husband tell the calling party (Tr. 157) that “ * * * he would have to go and see the damage before he could pay him any money. Or somebody, I think that’s what he said.” Witness further said she answered the phone, that it was a man calling, but she didn’t know who it was; but her husband said that “he would contact him later.”
The witness was further allowed to testify, over defendant’s appropriate objections, that on Sunday, in the daytime after the alleged fire on Saturday night, she and her husband and two children got in their car, drove to his mother’s home, left the children, exchanged their automobile for one belonging to the mother, and drove slowly by the Hooks’ home, and viewed the damage. She testified that on prior occasions they had been to the Hooks’ home in their car. The State insisted that dropping the children off and exchanging cars was to conceal their identity on the mission.
The issue at nisi prius and here is the admissibility vel non of the foregoing testimony of the ex-wife in the light of T. 15, Sec. 311, Recompiled Code, 1958, which reads:
“The husband and wife may testify either for or against each other in criminal cases, but shall not be compelled so to do.”
We wish to observe at the outset that the divorce existing between defendant and his wife did not affect or impair the principle of privileged communication between them. Owen v. State, 78 Ala. 425(2); Wigmore on Evidence, Vol. VIII, § 2334, p. 648; § 2835(3) & 2341.
Was the conversation of defendant over the telephone with another, apparently one of the principals, a privileged communication? Also, was his later conduct in viewing the impaired dwelling with his wife in the car a privileged communication?
In State v. Robbins, 35 Wash.2d 389, 213 P.2d 310, par. 3, at page 313, the Supreme Court observed as follows:
“The term ‘communication,’ within meaning of privileged communication rule, as to husband and wife, should be given a liberal construction and is not confined to mere audible communications or conversations between the spouses, but embraces all facts which have come to his or her knowledge or under his or her observation in consequence or by reason of confidence of marital relation, and which, but for confidence growing out of it, would not have been known. [Rem. Rev.Stat. § 1214, subd. 1].”
It appears in the instant case that the telephonic conversation, supra, occurred in the sanctity of defendant’s home in the presence of his wife in reliance on the confi *523 dentiality of a communication between husband and wife and covering a matter which behooved the husband to talk about in the presence of his spouse; likewise, the act of viewing the property was done in the presence of his wife in a manner that indicated a desire of secrecy on the part of the husband, but not shielded from his wife’s knowledge. The transportation to the scene originated in the home under the protection of a marital relationship. The rule should be given a liberal construction and not be confined to a mere audible communication as to this particular testimony of the ex-wife. We quote from Owen v. State, 78 Ala. 425, as follows:
“* * * Some of her [the wife’s] statements relating to the conduct of his, which would not likely have come to her knowledge in its details, if they had not been husband and wife. * * * ” Bracketed matter added.
Thus the husband felt free to talk over the telephone in his wife’s presence and to make the trip to see the damaged dwelling. Communications between husband and wife are discussed in general in Chapter 83, Vol. VIII, Wigmore on Evidence, § 2332, et seq., beginning at page 642.
In § 2334, Wigmore, marital disqualification and anti-marital privilege is distinguished. It is there observed:
“1. Marital disqualification. The disqualification of a husband and wife to testify on the other’s behalf (§§ 600-620, supra), a rule now practically extinct, is plainly different from the privilege of either against the other’s disclosure of communications. The judicial confusion of them was nevertheless frequent. And the occasional legislative commingling of them in the same sentence of the same enactment gave rise to much of this confusion.
“Perhaps the commonest error caused by the confusion with the moribund marital disqualification was the ignoring of the right of the communicating spouse to waive the privilege in his own behalf (§ 2340 infra); when the husband for example, offered the wife to prove his communications to her, the erroneous tendency was to treat the disclosure as absolutely prohibited in spite of his consent. A disqualification of the wife to testify in the husband’s behalf of course could not be waived by the husband; but it was and is of the essence of the husband’s privilege (as of every privilege) that it may be waived. And yet the communications, when offered by the privileged person, were very often excluded in apparent ignorance of the distinction.”
We will not burden this opinion with a lengthy discussion of marital privilege or communication and the advisability of protecting the marital relation and the home confidentialities. Suffice it to say that knowledge on the part of the wife of acts of her husband may and do often arise outside the scope of marital confidences and hence are not protected by marital privileges. For instance, the wife may see her husband drive an automobile up or against a child on the street. Such knowledge could arise outside the scope of marital relationship. She could have been a spectator at the scene. But the sanctity arises when the knowledge is acquired by and through the marital relationship. Such privilege has long been protected under the common law. The common law of England obtains in Alabama with exceptions. Title 1, § 3, Recompiled Code, 1958.
It is said in Weaver v. Hollis, 247 Ala. 57, 22 So.2d 525, that the common law is the base upon which all of the laws of the State have been constructed and when our courts are called upon to construe a statute — when they are called upon to ascertain and declare the legal effect and meaning of a legislative enactment — they must read the statute -in the light of the common law:
Under the laws of Alabama and its policies, as well as in other States of the United States, the home, where families reside, is the bedrock of our society, and is a stalwart pillar that affords retreat from the vagaries of the outside world, and affords the family occupants an opportunity to discuss their problems free from the ears of outsiders. *524 It is a haven of comfort and freedom of discussion — good or bad.
We don’t think it was the intention of the legislature in enacting § 311, supra, allowing each spouse in a criminal case to testify against the other at his or her option, to include confidences that originated in their family fireside discussions, even of a criminal nature.
It is also said in Wigmore, Vol. XIII, § 2340, inter alia, that “The privilege is intended to secure freedom from apprehension in the mind of the one desiring to communicate (§ 2332, supra); it thus belongs to the communicating one.”
We don’t think § 311, supra, erodes that long cherished privilege of marital communications embedded in our common law. The statute grants the option in criminal cases where the privilege of marital communication as here is not involved.
In our prior decision, Arnold v. State, supra, Judge Cates, writing for this court, questioned but did not decide the legal effect of such disclosure in a criminal case. We quote as follows:
“Here the quondam wife heard a telephone call by the husband. Was this a communication to her? See North v. Superior Court, 8 Cal.3d 301, 104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155.”
We conclude that in Owen v. State, 78 Ala. 425, the observations of the eminent Justice Stone, speaking for the Court, with respect to such privilege of communication, was not modified or disturbed by the enactment of § 311, supra. For further elucidation on the privilege of marital communications see 81 Am.Jur.2d, § 150, p. 190 and § 161, p. 198.
The judgment of the trial court is reversed and the cause remanded.
The foregoing opinion was prepared by Supernumerary Circuit Judge BOWEN W. SIMMONS, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; opinion is hereby adopted as that of the Court. The judgment below is hereby
REVERSED AND REMANDED.
All the Judges concur.