# Kelly v. The State.

### Indictment for Burglary.

1. *Sufficiency of indictment, in description of building, goods, &c.*—An indictment which charges that the defendant, with intent to steal, "broke into and entered the store of J. H., in which goods or merchandise, things of value, were at the time kept, for use, sale, or deposit" (Code, § 4343), is sufficient, without any further averment of the value of the goods.

2. *Confessions ; when voluntary and admissible.*—A confession by a person accused is not necessarily voluntary and admissible, because the person to whom it was made testifies that he used no promises nor threats to induce a confession; nor, on the other hand, is it rendered involuntary and inadmissible, because the person to whom it was made, not being an officer, or in authority, exhorted him to speak the truth, or told him that it would be better (or best) for him to tell the truth.

3. *Same.*—The witness in this case, testifying to the prisoner's confessions while in custody, said that he used no promises nor threats to induce a confession, but added: "I said to him, ' *You have got your foot in it, and somebody else was with you ; now, if you did break open the door, the best thing you can do is to tell all about it, and to tell who was with you, and to tell the truth, the whole truth, and nothing but the truth.*' I wanted to produce the impression on his mind that it was best for him to tell all about it, and I did produce that impression before he would tell me." *Held,* that the confession ought to have been excluded.

4. *Interrogating accused on preliminary examination.*—The practice of examining or interrogating an accused person, by the magistrate, pending the preliminary investigation or examination, is unwarranted by the principles of the common law, is not authorized by any existing statute, and is contrary to the spirit of the constitutional provision which declares that no person shall be compelled to give evidence against himself; and statements or confessions made by the accused, in response to questions thus propounded by the magistrate, are not competent evidence against him.

FROM the Circuit Court of Madison.

The material facts in this case are stated in the opinion of the court. The transcript of the record has never come into the hands of the reporter.

WALKER & SHELBY, for the appellant.

H. C. TOMPKINS, Attorney-General, for the State.

SOMERVILLE, J.—In the case of *Henderson v. The State,* decided at the last term, we held, that where an indictment, framed under section 4343 of the Code of 1876, describes the specific class of articles mentioned in the statute as kept in certain described buildings, for use, sale, or deposit, as *"goods,"* or *"merchandise,"* no averment need be made that they are valuable, the statute itself conclusively presuming that they are so. But, if the thing deposited is alleged to be *anything else* than goods or merchandise, it must be averred to be valuable, although its particular value in dollars and cents need not be stated. The present indictment charges, that the defendant "broke into and entered the store of J. H. Hawkins, in which *goods* or *merchandise*, things of value, were at the time kept, for use, sale or deposit, with intent to steal." This was clearly sufficient.—*Henderson's case,* 70 Ala. 23 ; *Norris v. The State,* 50 Ala. 126 ; Clark's Cr. Dig. § 86, and cases there cited.

The confessions made by the prisoner to the witnesses Cornutt and Lawler, should, in our opinion, have been excluded as evidence. True, it is stated by these witnesses, that they made no threats, or promises, by which to educe such confessions. This, however, is but the statement of a mere opinion, and not of a fact, as the evidence imports otherwise. The witness Lawler testifies as follows: " I said to him (defendant), '*You have got your foot in it, and somebody else was with you. Now, if you did break open the door, the best thing you can do is to tell all about it, and to tell who was with you, and to tell the truth, the whole truth, and nothing but the truth.*' I wanted to produce the impression on his mind, that it *was best for him to tell all about it,* [and] I *did produce that impresson* before he would tell me." This was said in presence of the witness Cornutt, who, as constable, held the defendant under arrest at the time.

It is no doubt the sounder doctrine, that a mere adjuration to *speak the truth,* addressed to a prisoner, will not authorize a confession induced by it to be excluded, where no threats or promises are applied.—Whart. Cr. Ev. §§ 647, 652, 654 ; *Aaron v. The State,* 37 Ala. 106. Nor can a promise, or inducement, be implied from the exhortation that it is *best* or *better to tell the truth,* it having been frequently so adjudged.—*King v. The State,* 40 Ala. 314 ; *Aaron's case,* 37 Ala. 106 ; Whart. Cr. Ev. § 647 ; 2 Lead. Cr. Cases, 189. But the rule is otherwise, where the party has been told, by a person in authority, that it is better for him to confess, or that he will be bettered by saying a particular thing.—1 Phil. Ev.; 4th Amer. Ed., 542–3 ; Whart. Cr. Ev. §§ 651, 654 ; 1 Whart. Amer. L. § 686.

The exhortation to the prisoner did not stop with adjuring him to tell the truth, or only with telling him that the best

[Kelly v. The State.]

thing he could do was to tell all about it, in the event he was guilty of the breaking. It goes further, by assuming his guilt, and by assuming also that the prisoner was accompanied by one or more accomplices; and he is told, in effect, that it would be best for him to tell all about these assumed facts. The manifest impression produced on the prisoner's mind must have been, that he would, in some unknown manner, fare better by confessing his guilt of the crime of burglary; and this inducement vitiates any confession evoked under its influence. Whart. Ev. § 651; *State v. York*, 37 N. H. 175; *Vaughan v. Com.*, 17 Grat. 576; Clark's Man. Cr. L. § 2948.

If we are to understand from the bill of exceptions, that the confessions testified to by the witness Lawler, in detail of the alleged burglary, followed the above inducement, or were elicited by it, as we think is its correct construction, these confessions were improperly admitted to go before the jury.

A question of more interest and practical importance remains yet to be considered. It relates to an alleged confession, or statement, made by the defendant during the progress of a preliminary investigation before a magistrate. During the trial, a satchel was produced, containing some of the goods taken from the storehouse which was alleged to have been burglariously entered. *The magistrate, thereupon, interrogated the prisoner, asking him if he knew anything about these goods, or the satchel exhibited to him* The prisoner answered, that the satchel was like one owned by him, which he had thrown into a field the night of the burglary, and which was proved to be found where the prisoner said he had thrown it. This occurred before the justice had rendered his decision, in the presence of twenty or thirty spectators, who were attending the trial, and after the regular witnesses had been examined. It appears in evidence, that the prisoner was a negro, a former slave, and without education, and he was entirely without the aid or advice of counsel. This statement was allowed to be given in evidence, as a voluntary confession by the defendant, in the trial of this cause before the Circuit Court; and this ruling of the court is assigned for error.

The practice of examining the accused is known to have been authorized, as a familiar and odious procedure in the Roman jurisprudence, and still exists in many parts of continental Europe. The maxim of the common law, however, was, *Nemo tenetur prodere seipsum;* and, therefore, as observed by Mr. Greenleaf, "no examination of the prisoner himself was permitted in England, until the passage of the statute of Philip and Mary."—1 Greenl. Ev. § 224. This statute was amended by 11 and 12 Vict., c. 42, and 14 and 15 Vict., c. 93, and has been reproduced, with various modifications, in some of the

[Kelly v. The State.]

States of the American Union. These statutes protect the rights of the accused, by many wise and humane safeguards, unnecessary to be here considered.—Whart. Cr. Ev. § 666. An enactment existed in this State, at its earliest history, authorizing such an examination, by requiring the justice to " proceed " to take the *voluntary* information of the accused in writing. This law now no longer exists, having been long since expunged from our statute-books by legislative repeal or amendment.—Aikin's Ala. Dig. p. 116, § 14; Toulmin's Laws Ala. 219.

The authority to make an examination of a defendant, under these acts, would seem to imply an authority on the part of the justice to put questions to him as to the facts proved against him. Such was the construction of the English statutes above alluded to.—2 Phil. Ev. (Cow. H. & E.) p. 241; 2 Lead. Cr. Cases, (B. & H.) 201. Mr. Greenleaf, in commenting on these statutes, says: "The manner of the examination is, therefore, particularly regarded, and if it appears that the prisoner had not been left wholly free, and did not consider himself to be so, in what he was called upon to say, or did not feel himself at liberty wholly to decline any explanation or declaration whatever, the examination is not held to have been voluntary."—1 Greenl. Ev. § 225. A good reason for this conclusion, probably, is found in the suggestion of the same author, elsewhere, that a prisoner, who is subjected to *an inquisitorial examination*, especially when he is unaided and unprotected by the presence of counsel, has his mind so oppressed by his calamitous situation, as to be brought under " the influence of disturbing forces against which it is the policy of the law to protect him."—1 Greenl. Ev. § 226. Unless a prisoner, under such circumstances, comprehends his rights fully, and is informed by the court that his refusal to answer the questions propounded could not prejudice his case, or be construed as an evidence of guilt, any responsive confessions, implicating him in the crime charged, must, in our opinion, be regarded as involuntary.—Whart. Cr. Ev. §§ 668–9; *State v. Rorie,* 74 N. C. 148; 1 Greenl. Ev. § 215, *note* 4; *Rex v. Greene,* 5 C. & P. 312; *Murphy's case,* 63 Ala. 1.

This subject is discussed, at some length, in the learned work of Mr. Best on Evidence; and he severely condemns *the practice of judicial interrogation,* prevailing under the continental systems of jurisprudence, as being entirely unauthorized by the common law, and contrary to the maxim that no person is bound to criminate himself, now imbedded, perhaps, in the Bill of Rights of every American Constitution. " What our law prohibits," says Mr. Best, " is *the special interrogation of the accused*—the converting him, whether willing or not, into a

[Atkinson v. Jones.]

witness against himself; assuming his guilt before proof, and subjecting him to an interrogation on that hypothesis."—2 Best Ev. § 557. It is manifest to our view, that such a power, once admitted, is liable to unlimited abuse. Though it might serve, in some cases, to extract the truth, it might be exercised with great harshness, so as to wring out of a prisoner evidence of his own accusation, of the truth of which, to say the least, there would exist a serious doubt. It is a power not judicial, but essentially inquisitorial, and, on the whole, prejudicial to the administration of justice. It is justly observed by the same author from whom we have quoted, that, "in short, *judicial interrogation,* however plausible in theory, *would be found in practice a moral torture;* scarcely less dangerous than physical torture of former times, and, like it, unworthy of a place in the jurisprudence of an enlightened country."—2 Best Ev. § 558. It is enough to say, that the practice is unwarranted, in our opinion, by the principles of the common law, and unauthorized by any existing statute in this State. It is, furthermore, contrary to the spirit of our Declaration of Rights, providing that the accused shall not be "compelled to give evidence against himself"—itself a mere embodiment of a principle of the common law.—Const. 1875, Art. 1, § 7. Confessions, elicited by such a censurable practice, are to be taken as involuntary, and should be excluded as criminative evidence against the person making them.

The judgment is reversed, and the cause remanded.