141 So.2d 181

James Wade **STAPLER**

v.

**STATE of Alabama.**

**8 Div. 82.**

Supreme Court of Alabama.

May 10, 1962.

Lusk & Lusk, Guntersville, for appellant.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for appellee.

COLEMAN, Justice.

This is an appeal from a decree in equity which ordered that the prosecution of a fifteen-year-old minor, under an indictment for murder and robbery, be transferred from the juvenile court to the circuit court.

On August 10, 1961, the grand jury returned the indictment and, on the same day, the circuit court ascertained that the minor was fourteen years of age and, therefore, under § 363, Title 13, transferred the cause to the juvenile court. On August 21, 1961, the juvenile court rendered judgment finding that the minor was more than fourteen years old, that he could not be made to lead a correct life and could not be properly disciplined under the provisions of Chapter 7, § 350 et seq., of Title 13, Code 1940, and transferring the cause back to the circuit court. Such a judgment by the juvenile court is provided for by § 364, Title 13.

From the judgment of the juvenile court, appeal was taken to the circuit court, in equity, as provided for by § 362, Title 13, which provides that on appeal, "the circuit court shall try the case de novo," and also that all appeals under this chapter shall take precedence over all other business of the court to which the appeal is taken.

The circuit court, in equity, after hearing testimony ore tenus, ordered the cause transferred to the circuit court, "* * * there to be placed upon the Criminal Docket of said Court and there to be proceeded against according to law." The decree is assigned as error.

Appellant recognizes the rule of review that the appellate court will not reverse a decree rendered on testimony heard ore tenus by the trial court unless the decree is palpably wrong. Appellant insists, however, that a consideration of the evidence in the record shows that the decree is palpably wrong.

Appellee replies that the finding of the equity court, with reference to the delinquency of a minor, is not revisable by the Supreme Court in the absence of a clear abuse of discretion, citing Berry v. State, 209 Ala. 120, 95 So. 453; and Sims v. State Dept. of Public Welfare, 259 Ala. 283, 66 So.2d 460. We do not think that either case supports appellee's proposition, as we hereinafter undertake to show.

The correct determination of the power of the juvenile court, and our duty on appeal, must be determined from an examination of the statute.

So far as we are advised, § 364, Title 13, originated as § 11 of Act No. 340, General Acts of 1907, page 442. § 11 of the 1907 Act, which bears but slight resemblance to § 364 of Title 13, provided that when a child under fourteen years of age is arrested for violation of law, the child must not be imprisoned but shall forthwith be taken before the proper judicial officer provided by the 1907 Act. § 11 was codified as § 6458 of Code 1907.

§ 6458 of the Code of 1907 was amended by Act No. 506, General Acts 1915, pages 577, 584. In the last two sentences of § 9 of said act will be found the progenitor of the first sentence of § 364, Title 13. The 1915 Act provided as follows:

"* * * If at any time, said probate court is convinced that any child brought before it on summons or so transferred to its jurisdiction, cannot be reformed and brought to lead a correct life, said court may dismiss said petition and allow said child trial in a court of criminal jurisdiction, or order said child returned to the court in which the indictment, affidavit, or charge was pending, where upon the court to which said child is recommitted shall proceed to hear said cause as though no suspension had been entered in said case. * * *"

Act No. 295, 1923 General Acts, page 296, approved September 18, 1923, made extensive amendment to the juvenile offender statutes. The first sentence of Subdivision (2) of § 11 of the 1923 Act, page 310, and the first sentence of § 364, Title

13, Code 1940, are substantially the same. That sentence, as it appears in Code 1940, recites:

"If, at any time, after thorough investigation or exercise of its disciplinary measures, the juvenile court or judge thereof shall be convinced that a delinquent child, more than fourteen years of age, brought before it under the terms of this chapter cannot be made to lead a correct life and cannot be properly disciplined under the provisions of this chapter, the juvenile court or judge thereof shall have authority to transfer the care of such delinquent to the jurisdiction of any other court in the county having jurisdiction of the offense with which said child is charged, there to be proceeded against according to law. * * *"

The 1923 Act made two significant changes in the sentence. First, where the 1915 Act provided that the probate court might transfer "any child," the 1923 Act, and the 1940 Code, limit the power of the juvenile court so that it may transfer only "a delinquent child, more than fourteen years of age," and not just any child. Second, the 1915 Act provided that "If at any time, said probate court is convinced" that any child before the court could not be reformed and brought to lead a correct life, the court could transfer the child, but the 1923 Act, and the 1940 Code, limit the power of transfer to " * * * any time, after thorough investigation or exercise of its disciplinary measures," and not just any time.

Where the 1915 Act apparently granted a power to transfer without investigation or trial of such measures, the 1923 Act, and the present law, require, as a condition precedent to transfer, that the juvenile court either make a "thorough investigation" of all pertinent circumstances, or "exercise" the disciplinary powers of the juvenile court under the statute. To hold otherwise would be to ignore the clear meaning of the language of the 1923 Act.

See Biennial Report of Attorney General, 1922–24, page 425.

In the instant case, there is no insistence that the juvenile court *exercised* "its disciplinary measures," and the order of the juvenile court to transfer the prosecution to the circuit court can rest only on the performance of the other condition which authorizes such transfer, namely, "thorough investigation."

Berry v. State, supra, was decided February 8, 1923, prior to the effective date of said Act No. 295, approved September 18, 1923. The Berry case was decided under the 1915 Act which did not require a "thorough investigation" or the "exercise of its disciplinary measures" by the juvenile court as a condition precedent to the exercise of its power to transfer the case against a minor, more than fourteen years of age, back to the circuit court.

The other case cited by appellee, Sims v. State Dept. of Public Welfare, supra, had nothing to do with the prosecution of a minor for crime. That case was a contest between grandparents and the Welfare Department for the custody of minor children and is not in point here.

In Ex parte State ex rel. Echols, 245 Ala. 353, 17 So.2d 449, also cited by appellee, the petitioner sought to prohibit the circuit court, in equity, from proceeding against a minor, or to compel transfer of the prosecution to the law docket with a jury. In the Echols case, the issue in the cause, trial of which petitioner sought to prohibit, was delinquency vel non, which is not the issue in the proceeding now under review. The issue here is whether the minor can be made to lead a correct life, etc., as the statute provides. With reference to that issue, and the transfer of the prosecution to the circuit court, which issue and transfer were not present in the Echols case, the court had this to say:

"The writ of prohibition is sought upon the theory that before the entry of the decree above noted by the juvenile court, that court had made an order or

decree transferring the cause to the circuit court for indictment and trial for the alleged offense pursuant to § 364. See Berry v. State, 209 Ala. 120, 95 So. 453; Powell v. State, 224 Ala. 540, 141 So. 201, 212.

"This procedure is to be resorted to only when the juvenile court, 'after thorough investigation or exercise of its disciplinary measures,' 'shall be convinced' the 'delinquent child' 'cannot be made to lead a correct life and cannot be properly disciplined under the provisions of this chapter.' § 364.

"Not now considering the proper course to be pursued in case a proper order had been entered, but not now of record, investing the circuit court with jurisdiction under § 364, we cannot, upon full consideration of the petition and exhibits, the answer of respondent and exhibits, the replication by the relator, and all testimony offered, hold other than that the cause is properly pending in the circuit court in equity on appeal for trial de novo under § 362." (245 Ala. 353, 356, 17 So.2d 449, 450)

Appellee has cited no authorities other than the three cases we have mentioned and § 364 of Title 13. A case which, as we think, sheds some light on the interpretation of § 364, is Macon v. Holloway, 19 Ala.App. 234, 96 So. 933; cert. denied, 209 Ala. 580, 96 So. 936.

In the Macon case, the court considered an act of the legislature which applied to counties of certain population and related to dependent, neglected, or delinquent children, to wit: Act No. 40, General and Local Acts 1920, page 76, approved October 2, 1920. The first sentence of § 20 of that act may well have been taken as a model by the draftsman of Act No. 295, 1923 Acts, page 296, discussed supra. The 1920 Act, considered in the Macon case, in pertinent part recited as follows:

"'Section 20. If at any time, after thorough investigation or trial of its disciplinary measures, the court or judge thereof is convinced that any delinquent child brought before it under the terms of this Act cannot be made to lead a correct life, and cannot be properly disciplined under the provisions of this Act, the court or judge thereof, shall have authority to transfer such delinquent child to the jurisdiction of any court in said county having jurisdiction of the offense of which said child was, or is charged, there to be proceeded against according to law, and as if said child if a male, were over sixteen, and if a female, were over eighteen years of age. * * *'"

In the Macon case, the minor applied to the circuit court for mandamus, to compel the juvenile court to rescind its order transferring the prosecution of the minor to the circuit court and to compel the trial of the minor as a juvenile in the juvenile court. The circuit court sustained demurrer to the petition, and, on the appeal that ruling was reviewed and affirmed. With reference to the power to transfer, conferred by the statute on the juvenile court, the opinion in pertinent part recites:

"The power lodged in the juvenile court by section 20 of the act 1920, supra, is not an arbitrary discretion. That section contemplates a judicial investigation of the question of whether the child can be reformed. The petition shows that there was a trial in the juvenile court, and 'that after the hearing of the evidence, and the conclusion of her said trial,' the judge of the juvenile court committed the petitioner to the circuit court of Montgomery county, Ala., to answer an indictment which might be found against her for the offense of grand larceny.

* * * * * *

"The act approved October 2, 1920, does not undertake to do any of the things which are referred to by the Texas court in the quotation ante. This act does not commit to the trial judge the arbitrary discretion to determine

the grade of the offense. Neither does it commit to him an unbridled discretion to determine which individual shall be prosecuted for felony and which shall be treated as a delinquent juvenile. The extent of the judge's authority under section 20 of the act under review is to determine whether or not a juvenile offender can be made to lead a correct life and be properly disciplined. If the judge ascertains that he can, the right of the state to try him for a criminal offense is postponed. If the judge ascertains that the juvenile offender cannot be made to lead a correct life and cannot be properly disciplined, then the state may proceed in its court of appropriate jurisdiction. * * *" (19 Ala.App. 234, 236, 238, 96 So. 933, 934)

█ In the light of the foregoing authorities, we are of opinion that the juvenile court could transfer the prosecution of the minor to the circuit court in the instant case only after a thorough investigation and a finding supported by proof that the minor cannot be made to lead a correct life and cannot be properly disciplined under the provisions of the juvenile statute.

We are further of opinion that on appeal to the circuit court, in equity, that court could transfer the prosecution to the circuit court only after such investigation and a finding supported by such proof presented on trial de novo.

In the case at bar, the evidence which was before the circuit court, in equity, is in the record before us and we must consider the same under the recognized rules of appellate review.

Seventeen witnesses testified on behalf of the minor. Many of the witnesses had known the minor all his life. All, except the child welfare worker, had known him for a number of years. Sixteen witnesses testified that his reputation in the community in which he lived was good, that he was a quiet boy, that he did not misbehave,

that he was obedient,. and that he was a good worker.

The child welfare worker had made an investigation pursuant to an order of the juvenile court. She testified as to the results of her investigation of the minor and his family and associates. Among other things she said:

"* * * I found in the immediate vicinity that James Wade had never been a problem to his parents. In fact, it was soon after the occurrence and the people could not even reconcile themselves to the fact the boy had anything to do with it because he was described as a quiet boy. One of. the neighbors stated he had loaned him his mule on several occasions to plow gardens. He worked part time in a chicken house to earn his own spending money. I found the father's salary is $100.00 a week, which takes care of the family. There was not much for spending money and the child did shift for himself. I checked the school. They said he had never been a disturbing element in the school. That he was below average student. That he was inclined to be a follower rather than a leader. His associates were marginal in their social and economic status in the community. He was not too interested in his school work, but he was mildly interested in basketball. He joined the Boy Scouts and attended a few times but not with regularity. The family are not regular in church attendance. In fact, they go irregularly."

She testified that on the basis of her investigation and experience, she "feels" that the minor, "* * * due to his age that he should be accepted by the Juvenile authorities in the juvenile age range and rehabilitated," and that she "feels" that he can be rehabilitated.

█ There is nothing in the testimony of these seventeen witnesses to support a finding that the minor cannot be made to

lead a correct life or that he cannot be properly disciplined under the provisions of the juvenile offender statutes. On the contrary, the testimony, if true, compels a contrary finding.

The only additional testimony is that of a deputy fire marshal who was called in to investigate an automobile fire which occurred in connection with the crimes with which the minor is charged.

This last witness testified that he received a call from the sheriff's office and that he went "to the scene together" with others. The witness testified as to what he found. Some of the testimony of this witness is clearly hearsay and could not be considered under any rule that holds hearsay to be incompetent. The details of what the witness found at the scene of the alleged crime are not relevant to the issue on trial, i. e., whether the minor can be made to lead a correct life and can be properly disciplined under the juvenile court statutes, unless there is evidence to connect the minor with the alleged crime.

This last witness testified that the minor made oral and written confession of his guilt, and the alleged written confession was admitted in evidence. When counsel for the minor moved to exclude a certain statement of the witness made in connection with the confessions, the court stated:

"Of course, I will just consider what is relevant."

The decree recites:

"The guardian ad litem made several objections to testimony that said minor participated in some other felonies in addition to the crimes charged in the indictment. The Court overruled such objections, believing such testimony to be relevant on the issue of juvenile delinquency and in aid of a proper decision of this cause. Ex Parte State, [ex rel. Echols] 245 Ala. 353, 17 So.2d 449. The Court, in reaching its decision in this cause, has considered such testimony, but, as to

other testimony, has considered only that which was legally competent."

We think the record discloses that the learned trial court considered the testimony going to prove the confessions of the minor and regarded the confessions as competent evidence.

■ The deputy fire marshal, as predicate to admission of his testimony, testified that neither he nor anyone else offered to the minor any inducement to get him to make a statement, but on cross-examination the deputy fire marshal testified as follows:

"Q You told them at that time that if they would help you solve this other thing that you would try to help them out on this other thing?

"A The only statement that I have made to either one of the children was that it was my opinion that if they told the truth and didn't try to hide anything and would tell the judge and everybody else the truth that the judge would look at it that they were trying to cooperate with the officers and it would be possible—

"Q To get them probation?

"A No. It would be possible he might be inclined to be a little lighter with them on their sentences."

We are of opinion that the evidence going to prove the confessions was not competent and, therefore, should not have been considered by the court.

■ This case was tried in equity, without a jury. The court had indicated that only relevant evidence would be considered. We think the record shows that the court was proceeding under Act No. 101, approved June 8, 1943, General Acts 1943, page 105, which appears as § 372(1), Title 7, Code of Alabama Recompiled 1958. See also Act No. 479, General Acts 1923, page 631. This statute provides that in the trial of equity cases it shall not be necessary that objection be made to any testimony which

may be offered by either party and that the court shall not consider any testimony which is irrelevant, immaterial, incompetent, or illegal, whether objections shall have been made thereto or not, and whether such testimony be brought out on direct, cross or re-direct examination, or is hearsay. In such posture of the case, we do not think it was necessary for the minor to object to the evidence proving the confessions, or to move to exclude it, if such evidence was incompetent.

§ 377, Title 13, provides that the "voluntary" confessions of any delinquent child, in reference to any cause, if otherwise competent, shall be received "in such court as legal evidence." The present Code section appears in Act No. 295, General Acts 1923, at page 315, as an amendment of § 6464, Code 1907, which formerly provided that the confessions made by a child under fourteen years of age shall never be legal or competent evidence against the child in any court or proceedings whatever. Thus it appears that the "voluntary" confessions of the minor in the instant case would be admissible against him if the confessions be otherwise competent.

Appellant contends that the evidence relating to the crime charged against the minor in the instant case is not relevant to the issue of whether he cannot be made to lead a correct life and cannot be properly disciplined as aforesaid. In view of our conclusion that the confessions were not shown to be voluntary, we forego determination of the issue raised by appellant's contention.

■ It scarcely seems necessary to cite authority for the proposition that a confession is prima facie inadmissible as evidence and it must be satisfactorily shown to the court that it is voluntary before it can be received in evidence. Mullis v. State, 258 Ala. 309, 62 So.2d 451.

In the instant case, however, predicate was laid to show that the confessions were voluntary, and it was only on cross-examination of the witness who proved the confession that its involuntary character was shown.

In Newman v. State, 49 Ala. 9, judgment was reversed for admission of evidence proving a confession which was held to be involuntary.

Where witness told defendant "you had better return the chair" which had been stolen, and defendant replied "that he would," this court held the confession involuntary and inadmissible. Lacey v. State, 58 Ala. 385.

In Owen v. State, 78 Ala. 425, the defendant had been delivered into the custody of J. W. Robertson, a special constable.

"* * * Said Robertson was examined as a witness for the prosecution, and testified to confessions made to him by the defendant while on the road to the jail, in substance as follows: 'He said he was thinking about what trouble the boys had got into in breaking into Mr. Young's store; that he, Tom Owen, Jack Armor, and Bill Warren were into it, and were led by a white man named John Howard, or Jim Reid; that they broke into the store with a hammer and sledge, and got into the safe in the store, and took the safe off, and burst it open, and took out $260 in money.' The witness stated, 'that he offered no inducements, and made no threats to get defendant to make said statements, but that he made them voluntarily, freely, and of his own accord;' but he further stated, on cross-examination, 'that while the defendant was under guard, when witness entered the room, Joe Young (the son of Reason Young) and Henry Jones stated, in the presence of the defendant, that it would go lighter with him, if he would confess and tell all about it; that said Joe Young further stated to witness, in the presence and hearing of the defendant, that Reason Young and Ben Owen had told him to tell defendant, that if he would confess and tell on all the

others who were engaged in it, his father would turn him loose, and would make a State's witness of him; and witness then told defendant, that said Young and Owen would do what they promised; but he denied his guilt, and said he knew nothing about it.' * * * On the evidence adduced relating to the confessions, the defendant moved the court to exclude them as evidence; and he duly excepted to the overruling of his objections and motion." (78 Ala. 425, 426, 427)

This court reversed and said:

"The rule is clearly settled in Alabama, as elsewhere, that confessions can not be given in evidence against a person charged with crime, until they are first shown to the satisfaction of the court to have been voluntarily made. Any, the slightest menace, or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with, if he will confess—either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner, which may, in their nature, generate such fear or hope, render it not only proper but necessary that confessions made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made, after all trace of hope or fear had been fully withdrawn, or explained away, and the mind of the prisoner made as free from bias and intimidation as if no attempt had ever been made to obtain such confessions. And when a confession has been once obtained after appliances of hope or fear, any subsequent confession must alike be excluded, until the prisoner's mind is fully and clearly disabused in the manner suggested above, and until it is fairly explained to him that the confession previously made can not harm him, nor be given in evidence against him. Less than an entire obliteration of all ground of hope or fear previously engendered will not meet the severe requirements of the law; and trial judges could not well be too strict in the enforcement of this rule. We need not elaborate this doctrine. It has been so fully declared, that further comment is unnecessary.—Porter v. The State, 55 Ala. 95; Brister v. The State, 26 Ala. 107; 2 Lead.Cr. Cas. 113; Redd v. The State, 69 Ala. 255; Kelly v. The State, 72 Ala. 244; 1 Greenl.Ev. § 214. Under these rules, all the confessions of the prisoner proved against him were improperly admitted." (78 Ala. 425, 428)

Concerning Anderson v. State, 104 Ala. 83, 16 So. 108, it has been said:

"A confession induced by a statement of the officer who had arrested the defendant on a charge of bastardy, that certain persons were going to force the accused to leave the country, and that it would go lighter with him, as he could not deny the charge, to own up, was involuntary. Anderson v. State, 104 Ala. 83, 16 So. 108." [Ammons v. State, 80 Miss. 592, 32 So. 9, 18 L.R.A., N.S., 768, 821.]

In another case, on trial for infanticide, the defendant had been told "Tell us the truth about it all, and that will be the last of it." Defendant shortly after said, "Yes, Martha did have a baby, and I burned it up." This court held it error to refuse to exclude this evidence, for the reason that inducement was held out to defendant to make the confession. Gregg v. State, 106 Ala. 44, 17 So. 321.

A confession induced by hope was held inadmissible in Ballard v. State, 225 Ala. 202, 142 So. 668.

The rule of procedure on admission of testimony to prove a confession has been stated as follows:

" * * * the question, whether confessions were voluntarily made or not,

is one of law, to be decided by the court, and not one of fact for decision by the jury. When such testimony is offered, preliminary proof should first be made, showing the circumstances under which the alleged confession was made; and when desired by either party, the court, before admitting the evidence, should hear the testimony offered on each side, and from it determine whether the testimony establishes the fact that the confession was voluntarily made. And if, after receiving such testimony, it is afterwards shown that the confession was procured by threats or promises, as above defined, the court should exclude from the jury all evidence of such confessions.—Bob v. The State, 32 Ala. 560; Aaron v. The State, 37 Ala. 106; King v. The State, 40 Ala. 314; 1 Greenl.Ev. § 219. So, if, after hearing all the evidence, the mind of the court entertain a reasonable doubt whether the testimony was or was not voluntary, that doubt ought to be resolved in favor of the accused, and the testimony excluded.—2 Lead. Cr.Cases, 167." Bonner v. The State, 55 Ala. 242, 246.

See also Lewis v. State, 220 Ala. 461, 125 So. 803.

Although the rule is that where proper predicate is laid and the confession is admitted in evidence, but it afterwards appear, upon cross-examination, or otherwise from the evidence, that the confession was not voluntary, then the court should, on proper motion, exclude the confession; nevertheless, it has been held that, in the absence of the motion to exclude, the trial court cannot be put in error for permitting the evidence to remain before the jury. Lett v. State, 19 Ala.App. 298, 97 So. 148; cert. denied, 210 Ala. 699, 97 So. 923; Minton v. State, 20 Ala.App. 176, 101 So. 169. See also Dossett v. State, 19 Ala.App. 496, 98 So. 359.

In the instant case, the statute itself, Act No. 101, General Acts 1943, page 105, supra, makes the objection and motion to exclude. Under Act No. 101, supra, "The court will, without objection, only consider legal evidence * * *." Low v. Low, 255 Ala. 536, 539, 52 So.2d 218. Although, on preliminary examination, the witness testified that no one offered the minor any inducement to get him to make a statement, the same witness, on cross-examination testified that he told the minor, in effect, that if the minor "didn't try to hide anything," "he," meaning "the judge," might give a lighter sentence. This statement by the witness stands uncontradicted. We are of opinion that the undisputed evidence shows that the confessions were not voluntary and the evidence going to prove them should have been excluded and not considered by the court.

We do not ignore the rule which has been stated as follows:

"* * * The correct principle, however, is as stated by Wharton: 'Although comfessions, obtained by threats or promises, are not evidence, yet, if they are attended by extraneous facts, which show that they are true, any such facts which may be thus developed, and which go to prove the existence of the crime of which the defendant was suspected, will be received as testimony: e. g., where the party thus confessing points out or tells where the stolen property is; or when he states where the deceased was buried; or gives a clue to other evidence which proves the case.'—1 Wharton's Am.Cr.Law, § 695; 1 Phill.Ev. 412; 1 Greenl.Ev. §§ 231–2. It is not the entire confession, however, which may be received: it is only so much of it as relates *strictly* to the material fact discovered, that may be given in evidence; for the fact discovered has a reasonable tendency to confirm that part of the confession, and to exclude the idea of its fabrication under undue influence.

"* * * Applying this rule to the evidence in this cause, it was proper to

**368**

leave to the consideration of the jury the fact that, in consequence of the statement made by the prisoner, a part of the stolen goods were found in the possession of a particular person, recently after the burglary; but not his acknowledgment that he had broken and entered the store, or that he had stolen the goods. These are facts the jury must collect or not from all the circumstances of the case, and they are not to be aided by confessions extorted from the excited hopes of the prisoner." Murphy v. State, 63 Ala. 1, 4, 5.

The minor had allegedly confessed that he took money, and later an amount of money had been found buried where the minor showed the witness. We do not find it shown, however, other than by the confessions, that the money recovered had, in fact, ever been stolen. If the money could be regarded as stolen, then it would be proper for the court to consider that, in consequence of the statement made by the minor, the stolen money had been found at the spot pointed out by the minor, but not his acknowledgment that he had participated in the alleged crimes or had stolen the money. Those are facts that the court must collect or not from all the circumstances of the case, and the court is "not to be aided by confessions extorted from the excited hopes of the prisoner." Murphy v. State, supra.

When the confessions of the minor are excluded, there is no evidence left to support a finding that the minor "cannot be made to lead a correct life and cannot be properly disciplined under the provisions of this chapter." A finding, which requires evidence to support it, but which is not supported by evidence, cannot be allowed to stand.

Reversed and remanded.

SIMPSON, GOODWYN, and MERRILL, JJ., concur.