500 P.2d 209

STATE of Idaho, Plaintiff-Respondent,

v.

Gary D. GIBBS, Defendant-Appellant.

Nos. 10957, 10958.

Supreme Court of Idaho.

Aug. 3, 1972.

Donart & Higgins, Weiser, for defendant-appellant.

W. Anthony Park, Atty. Gen., Martin R. Ward, Deputy Atty. Gen., Boise, Lary C. Walker, Pros. Atty., Washington County, Weiser, for plaintiff-respondent.

McQUADE, Chief Justice.

On March 16, 1971, two petitions were filed in the magistrate's division of the Third Judicial District in the interest of Gary D. Gibbs, a child under eighteen years of age. The petitions alleged that Gary, then seventeen years old and residing in Oregon near Weiser, Idaho, committed two separate acts of first degree burglary with the intent to commit larceny on the night of March 10, 1971, in Idaho. On March 18 the prosecuting attorney filed motions for the magistrate's division to waive jurisdiction [1] under the Youth Rehabilitation Act (Y.R.A.).

1. I.C. § 16–1806 provides, in pertinent part: *"Transfer to other courts.—1.* The court may waive jurisdiction and order a child held for criminal proceedings after full investigation and hearing when:

"a. a child sixteen (16) years of age or over is alleged to have committed an act prior to having become eighteen (18) which would be a felony if committed by an adult[.]"

On March 19, Gary's parents were mailed two summonses notifying them that petitions had been filed alleging that their son was within the purview of I.C. § 16–1803(1) (b) of the Y.R.A.[2] The summonses ordered the parents and child to appear in magistrate's court on March 29, and notified them of their right to be represented by counsel. However, the summonses did not indicate the purpose of the appearance beyond reciting allegations in the petitions; neither did they disclose the pending motions for the magistrate to waive jurisdiction.

On March 29, the magistrate conducted what were termed as "interviews" on the two petitions. Neither the boy nor his parents were represented by counsel. However, upon being fully advised of their rights, the parents and child indicated that they were willing to proceed. They were further advised that they could terminate the proceedings at any time by refusing to answer questions. In that event, "hearings" would be scheduled, at which time the State would be required to produce evidence showing Gary to come within the purview of the Y.R.A.

After initial questioning regarding the boy's age and residence, the magistrate informed Gary and his parents that the court could waive jurisdiction under the Y.R.A. and bind Gary over to the district court for trial as an adult on each charge of first degree burglary. If found guilty at such a trial Gary could be sentenced to not less than one nor more than fifteen years in the state penitentiary for each felony.[3] It appears from the record that this disclosure in each "interview" represented the first notice to Gary and his parents that a purpose of the proceedings was to determine whether to bind the boy over to district court.

Gary and his parents were then informed that the magistrate could not, at such proceedings, accept a plea of guilty or find Gary guilty. The magistrate requested Gary to tell him "whatever he wanted to" about the allegations in order to determine their sufficiency to bind Gary over for trial. Gary indicated, at both "interviews" that the allegations in the petitions were true. At the first "interview" the magistrate asked Gary and his parents if they had consulted a doctor concerning psychiatric examination and treatment. They indicated they had and that the doctor had recommended "family-wise" counseling since there were difficulties at home, but "there was no mental illness." The magistrate was further informed that Gary had been in that court before and at that time was on probation for previous offenses not specified in the record. At the conclusion of each "interview" the magistrate found Gary within the purview of the Y.R.A., but then waived jurisdiction and bound him over to the district court for trial as an adult on the felony charges. The court subsequently entered written "decrees" to this effect, and supplemented these with "orders" also waiving jurisdiction.

Following these proceedings, Gary retained counsel and appealed to the district court from the waivers of jurisdiction in the magistrate's division. Further criminal proceedings in the district court against Gary were stayed pending the appeal. Gary contended that when he admitted the truth of the allegations in the petitions, he entered the functional equivalent of a guilty plea and on that basis was found to

2. "16–1803. *Jurisdiction—Children—Minors.*—Except as otherwise provided herein and subject to the prior jurisdiction of a United States court, the court shall have exclusive jurisdiction in proceedings:
"1. Concerning any child living or found within the county;
\* \* \* \* \*

"b. who has violated any federal, state or local law or municipal ordinance, regardless of where the violation occurred, excepting violations of regulations and ordinances pertaining to the operation of motor vehicles \* \* \*."

3. I.C. § 18–1403.

be within the purview of the Y.R.A. He argued that constitutional protections from double jeopardy [4] should have precluded the magistrate from binding him over for trial to the district court on the same charges. The district court found that the child and his parents were specifically admonished by the magistrate that a plea of guilty could not be entered or accepted at the "interviews" and that the proceedings were preliminary in nature. The district court held that there could have been no plea or adjudication of guilt to create former jeopardy, and the "orders" waiving jurisdiction were affirmed.

In his appeal to this Court, Gary has assigned error generally, on "due process" grounds, to the waiver of jurisdiction. Under that rubric he couples his double jeopardy contention with the argument that he was denied his right to a proper hearing before the magistrate. For the reasons articulated below, we hold that the waiver was invalid because (1) it was unauthorized by statute; (2) it subjected Gary to possible double jeopardy; (3) the waiver proceedings were not prefaced by timely notice advising Gary and his parents that motions to waive jurisdiction were pending before the magistrate; and (4) the waiver decision did not conform to the criteria set forth *infra.*

I

▪ It is useful to establish at the outset a framework for analysis, by examining more closely the conflicting "orders" and "decrees" entered by the magistrate. Each "order" simply waived jurisdiction and bound Gary over for trial in the district court under I.C. § 16–1806, *supra.* However, the "decrees" entered prior to the "orders" also contained findings that Gary was within purview of the Y.R.A.

under I.C. § 16–1803, *supra,* because he violated state law. I.C. § 16–1814 provides that if the magistrate finds jurisdiction under I.C. § 16–1803 he shall so "decree" and then may select among six listed final dispository possibilities. Waiver of jurisdiction is not one of those possibilities. A magistrate cannot find jurisdiction under I.C. § 16–1803 and then purport to waive jurisdiction under I.C. § 16–1806.

▪▪ Ordinarily, as a matter of logic, the magistrate might surmise that he must find jurisdiction under the Y.R.A. before such jurisdiction could be waived. However, I.C. § 16–1803 imparts a narrow meaning to the term "jurisdiction" when it provides that the court shall have exclusive jurisdiction over a juvenile "who has violated * * * any * * * state * * * law * * *." Taken literally, I.C. § 16–1803 creates a dilemma; for if the magistrate finds the accused to be a violator who is therefore subject to the court's exclusive jurisdiction under the Y.R.A., I.C. § 16–1814 is activated and precludes waiver of the jurisdiction thus found. Such an interpretation effectively would nullify I.C. § 16–1806. This Court adheres to the cardinal principle that a statutory provision will not be deprived of its potency if a reasonable, alternative construction is possible.[5]

The statutes may be reconciled when we recognize that the express grant of jurisdiction over a juvenile "who has violated * * * any * * * state * * * law" necessarily includes the incidental power to review the facts and circumstances, and to determine whether the accused is in fact a violator who is amenable to rehabilitative treatment under the Y.R.A. Prior to finding the defendant a violator, I.C. § 16–1814 does not require the court to choose among the six final dispositions. Therefore, at this point the court may elect on the basis

4. Idaho Const., art. I, § 13; U.S.Const., Amend. 5; *see* Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), applying Fifth Amendment protection from double jeopardy to a state prosecution through the Fourteenth Amendment.

5. *E. g.,* Sampson v. Layton, 86 Idaho 453, 387 P.2d 883 (1963); Filer Mutual Telephone Co. v. Idaho State Tax Comm., 76 Idaho 256, 281 P.2d 478 (1955).

of its review of the facts and circumstances, to waive jurisdiction pursuant to I.C. § 16–1806, rather than assuming it under I.C. § 16–1803. However, the court cannot do both.

## II

■ By undertaking to do both in this case, the magistrate not only entangled the applicable statutes, but also thereby created the closely related double jeopardy issue to which appellant directs our attention. Double jeopardy has been termed "[t]he least litigated issue in the area of procedural protections and constitutional rights in the juvenile courts."[6] Those courts which have addressed the question are in conflict. Until recently, the greater weight of authority appeared to rest on the proposition that jeopardy does not attach in juvenile proceedings because they are noncriminal in nature.[7] The premise that such proceedings are not criminal was rooted in the assumption that the objectives of reform and rehabilitation required a "socialized," informal court procedure inducing the child "to feel that he is the object of [the court's] care and solicitude."[8] That assumption, merged with the doctrine of *parens patriae* borrowed from courts of chancery, led this Court six decades ago to exempt juvenile courts from the rigors of

due process because their purpose was not to try crimes but "to confer a benefit on the child and the community in the way of surrounding the child with better and more elevating influences and of educating and training him * * *."[9]

Nevertheless, this "optimism of a more hopeful day" could not forever obscure the fact that, "[t]o the child and his family the imposition of authority or commitment to a training school seemed little different from the consequence of a criminal conviction."[10] Moreover, studies of juvenile treatment programs throughout the country began to reveal that rehabilitation was not always achieved, but occasionally had been so overshadowed by emphasis on discipline that the programs resembled the penal systems they were intended to replace.[11] In Kent v. United States,[12] the Supreme Court observed:

"There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children."[13]

In 1958 a federal district court for the District of Columbia first brought this guarded view of juvenile courts to bear on the double jeopardy question. In United

6. Comment, Criminal Offenders in the Juvenile Court: More Brickbats and Another Proposal, 114 U.Pa.L.Rev. 1171, 1212 (1966).

7. *See, e. g.,* In re McDonald, 153 A.2d 651 (D.C.Mun.Ct.App.1959); Moquin v. State, 216 Md. 524, 140 A.2d 914 (1958); People v. Silverstein, 121 Cal.App.2d 140, 262 P.2d 656 (1953); In re Santillanes, 47 N.M. 140, 138 P.2d 503 (1943).

8. Mack, The Juvenile Court, 23 Harv.L. Rev. 104, 120 (1909).

9. In re Sharp, 15 Idaho 120, 127, 96 P. 563 (1908); *accord, e. g.,* Hewlett v. Probate Court, 66 Idaho 690, 168 P.2d 77 (1946).

10. Paulsen, Kent v. United States: The Constitutional Context of Juvenile Cases. 1966 Sup.Ct.Rev. 167, 175, 176 (1966).

11. *See, e. g.,* The President's Commission on Law Enforcement, and Administration of Justice, Task Force Report: Corrections (1967); U.S. Dept. of H.E.W., Institutions Serving Delinquent Children, Children's Bureau Publication No. 360 (1957). *Compare* Report of Idaho Children's Commission 233 (1962). In its final report, "The Challenge of Crime in a Free Society" (1967), the President's Commission flatly stated, at page 85: "[T]he promise of the juvenile courts to help the child, to rehabilitate him, to lead him into a healthy and constructive life has not been kept."

12. 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed. 2d 84 (1966).

13. 383 U.S., at 556, 86 S.Ct., at 1054.

States v. Dickerson[14] the court rejected the ostensibly non-criminal nature of juvenile proceedings as dispositive of the issue:

"It is unnecessary, therefore, to determine whether the Juvenile Court is a criminal court or, as is contended by the Government, a true civil court. Irrespective of this consideration, the constitutional limitations are applicable if the final action of the court may result in depriving a person of his liberty. Whether the enforced incarceration may be in a jail, penitentiary, reformatory, training school, or other institution, is immaterial. What matters is the potential loss of liberty." [15]

The federal district court held that the defendant's admission to the allegations against him, coupled with a finding of juvenile court jurisdiction over him as a delinquent child, constituted a plea and conviction upon which jeopardy attached. Subsequent waiver of jurisdiction therefore was precluded.[16]

The *Dickerson* decision immediately spawned a number of attacks by commentators on the traditional rule that jeopardy could not attach to juvenile proceedings.[17]

In response, state and federal courts recently addressing the issue have held or clearly indicated that jeopardy does attach upon a finding by the juvenile court as to whether the defendant is delinquent, or is a violator within the court's jurisdiction.[18] In our view, these authorities embody a more realistic concept of juvenile proceedings and better comport with the growing recognition that juveniles are entitled to fundamental elements of due process.[19] The rule thus selected is plainly applicable to the facts of the present case. Because the "orders" waiving jurisdiction were unauthorized by I.C. § 16–1814, activated by the "decrees" finding jurisdiction under I. C. § 16–1803, they are of no force or effect. Therefore, the "decrees" in the record, if otherwise valid, establish grounds for Gary Gibbs' commitment to an institution, or for another form of final disposition authorized by I.C. § 16–1814. The "decrees" would expose Gary to the possible loss of liberty upon which jeopardy attaches.

Moreover, because the admissions elicited during the "interviews" were used as the sole basis for finding Gary a viola-

14. 168 F.Supp. 899 (D.D.C.1958).

15. 168 F.Supp., at 901.

16. This decision was reversed on appeal, United States v. Dickerson, 106 U.S.App. D.C. 221, 271 F.2d 487 (1959), but the central proposition, that jeopardy could attach in juvenile proceedings, was not challenged. Rather, the court of appeals held that jeopardy did not attach in that particular case because under District of Columbia law, unlike that of Idaho, a finding of jurisdiction due to delinquency was a proper antecedent to waiver of jurisdiction. Consequently, such a finding did not by itself create an exposure to possible loss of liberty upon which jeopardy attached.

17. *See,* e. g., Sheridan, Double Jeopardy and Waiver in Juvenile Delinquency Proceedings, 23 Fed.Prob. 43 (1959); Note, Double Jeopardy Applied to Juvenile Proceedings, 43 Minn.L.Rev. 1253 (1959); Case Note, 5 How.L.J. 246 (1959). A recent analysis, taking account of Supreme Court developments, appears in Note, Double Jeopardy and Due Process in the

Juvenile Courts, 29 U.Pitt.L.Rev. 756 (1968).

18. M. v. Superior Court of Shasta County, 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664 (1971); Collins v. Texas, 429 S.W.2d 650 (Tex.Ct.Civ.App.1968); Rice v. District of Columbia, 128 U.S.App.D.C. 194, 385 F.2d 976, 978n (1967); Garza v. Texas, 369 S.W.2d 36 (Tex.Ct.Crim.App. 1963). *See also* People v. Brown, 13 Cal. App.3d 876, 91 Cal.Rptr. 904 (1971), and Anonymous v. Superior Court In and For Pima County, 10 Ariz.App. 243, 457 P.2d 956 (1969), which are cited by respondent for the traditional rule but whose thrust is the opposite if applied to the present case. For holdings based on due process generally, rather than double jeopardy in particular, *see* Hultin v. Beto, 396 F.2d 216 (5th Cir. 1968); Sawyer v. Hauck, 245 F.Supp. 55 (W.D.Tex.1965).

19. *See* Kent v. United States, *supra note* 12; Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

tor of state law, we would be required to treat those admissions as accepted pleas of guilty in order to sustain the validity of the "decrees." In that event, the "interviews" could not be viewed simply as "preliminary" proceedings, to which jeopardy has been held not to attach,[20] because their actual function exceeded mere determination of whether a public offense had been committed and whether there was probable cause to believe Gary committed it. Rather, the accepted pleas of guilty would establish former jeopardy barring further prosecution on the same charges.[21]

■ We conclude that the "orders" waiving jurisdiction will be free of statutory and constitutional infirmity only upon vacation of the "decrees." Absent the "decrees" we find nothing in the transcripts of the "interviews," by themselves, to raise further problems of statutory conflict or double jeopardy.

### III

■ The next question is whether, apart from the "decrees," the "orders" waiving jurisdiction were properly entered. I.C. § 16–1806, *supra,* requires the magistrate to conduct a "full investigation and hearing" prior to waiving jurisdiction. Appellant argues that the magistrate in this case did not conduct the hearing with accompanying investigation as provided by the statute, when construed in the context of due process requirements.

■ In Kent v. United States [22] the Supreme Court declared that "the waiver of jurisdiction is a 'critically important' action determining vitally important statutory rights of the juvenile." [23] The most important right is that to treatment as a juvenile rather than as an adult. If retained under Y.R.A. jurisdiction in this case, Gary might have been subject to rehabilitative care and treatment until his twenty-first birthday;[24] but if convicted in district court he might be sentenced to fifteen years in the penitentiary on each of two charges. This difference in possible dispositions reveals that the magistrate's decision to waive jurisdiction in this case was "critically important" in the sense denoted by the Supreme Court. As expressed in *Kent,* such a decision must culminate from proceedings which "satisfy the basic requirements of due process and fairness, as well as * * * the statutory requirement of a 'full investigation.' " [25]

To satisfy an essential requisite of procedural due process, a "hearing" must be prefaced by timely notice which adequately informs the parties of the specific issues they must prepare to meet.[26] It is clear from the record in this case that a primary purpose of the "interviews" to which Gary and his parents were summoned was to determine whether jurisdiction under the Y.R.A. should be waived. The summonses contained no reference to this impending determination. Because they communicated only the allegations in the petitions, the summonses did not advise the Gibbs family that any question beyond Gary's guilt or innocence of the charges would be consid-

20. United States ex rel. Rutz v. Levy, 268 U.S. 390, 45 S.Ct. 516, 69 L.Ed. 1010 (1925); Collins v. Loisel, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062 (1923); *cf.* State v. Urie, 92 Idaho 71, 437 P.2d 24 (1968).

21. State v. Randolph, 61 Idaho 456, 102 P.2d 913 (1940); *see* further authorities compiled in Annotation, 75 A.L.R.2d 683.

22. *See* note 12, *supra.*

23. 383 U.S., at 556, 86 S.Ct., at 1055, 16 L.Ed.2d 84.

24. I.C. § 16–1805.

25. 383 U.S., at 553, 86 S.Ct., at 1053.

26. Application of Gault, *supra* note 19. On fundamental elements of procedural due process *Gault* and *Kent* give consistent guidance, although they analyze different stages of the juvenile process. Welch, Kent v. United States and In re Gault: Two Decisions in Search of a Theory, 19 Hastings L.J. 29 (1967); Ketcham, Guidelines from Gault: Revolutionary Requirements and Reappraisal, 53 Va.L.Rev. 1700 (1967); Steinhauer v. State, 206 So.2d 25 (Fla.App.1968). *Compare* Prather v. Loyd, 86 Idaho 45, 382 P.2d 910 (1963); Foster v. Walus, 81 Idaho 452, 347 P.2d 120 (1959).

ered. Consequently, when Gary and his parents appeared before the magistrate without counsel, the transcripts of the "interviews" disclose that they were not prepared to address waiver as an issue separate from guilt or innocence, when it suddenly was raised.[27] Under these circumstances we are forced to conclude that the requirement of timely and adequate notice was not satisfied in the proceedings below. The lack of required notice precludes the "interviews" from qualifying as the fair "hearings" which the Supreme Court in *Kent* held indispensable to the "critically important" decision to waive jurisdiction.[28]

## IV

 Unless the waiver decision is based on known or ascertainable criteria, meaningful preparation to meet the waiver issue will be impossible, even with the assistance of counsel. I.C. § 16–1806(a) provides no such standards; the waiver decision rests entirely in the discretion of the magistrate.[29] However, that legislative grant of discretionary authority must be interpreted consistently with the express purpose of the Y.R.A. to establish "a legal framework conducive to the constructive judicial processing of children's cases * * * through a coordinated program of rehabilitation."[30] The absence of established criteria for waiver of jurisdiction can result in deviation from, or frustration of, this legislative purpose.[31]

Moreover, there is a recognized need for criteria to prevent infringements of due process or equal protection in the application of statutes authorizing waiver to particular cases.[32] Finally, criteria are essential to meaningful appellate review of

27. During the first "interview," the magistrate informed the Gibbs of the possibility of waiver and asked Gary whether he desired "to go ahead and talk." Gary responded affirmatively and admitted to the charges in the first petition. Subsequently, the magistrate asked whether Gary had "anything else" to tell him. Gary replied, "I don't know quite what to say. Maybe there is—I will answer any questions that you want to ask me." When the parents were asked for a statement, Mr. Gibbs answered, "I don't have anything to say." When the magistrate offered to convene a fuller hearing, at which the Gibbs could have an attorney present, Mrs. Gibbs said, "I don't feel it necessary. We know he is guilty, believe him guilty. Of course why he did it we don't know." At the second "interview," the magistrate flatly asked Gary whether the allegations in the second petition were true:
"GARY GIBBS: Yes, sir.
"THE COURT: Mr. Gibbs, do you have anything that you want to say?
"MR. GIBBS: No, sir.
"THE COURT: Mrs. Gibbs, do you have anything that you want to say?
"MRS. GIBBS: (Silence)
"THE COURT: You are 17 at the present time?
"GARY GIBBS: Yes, sir.
"THE COURT: Then at this time * * * [the court] waives jurisdiction of Gary Duane Gibbs under the provisions of the Youth Rehabilitation Act."

28. State v. Halverson, 192 N.W.2d 765 (Iowa, 1972).

29. This section, enacted in 1963, continues the discretion earlier granted by the 1955 Youth Rehabilitation Act. Section 6 of the 1955 Act provided that "if the court after full investigation deems it contrary to the best interest of the child or of the public to retain jurisdiction, the court may in its discretion certify such child for proper criminal proceedings * * *." Idaho Session Laws, ch. 259, p. 606 (1955). Under prior statutes, the certification of all such cases for criminal proceedings, where the offense would be a felony if committed by an adult, was automatic. See I.C.A. § 31–1305 (1932) and I.C.S. § 1014 (1919). Thus, the 1955 Act and I.C. § 16–1806 authorize the juvenile court to expand its jurisdiction, by including felony cases selected in the exercise of judicial discretion.

30. I.C. § 16–1801; *cf.* M. v. Superior Court, 270 Cal.App.2d 566, 75 Cal.Rptr. 881 (1969); Cradle v. Cox, 327 F.Supp. 1169 (E.D.Va.1971).

31. See Boches, Juvenile Justice in California; A Re-Evaluation, 19 Hastings L.J. 47, 95–97 (1967); Comment, Transfer of Juvenile Cases to Adult Courts, 48 Can.B.Rev. 336 (1970).

32. In re Correia, 104 R.I. 251, 243 A.2d 759 (1968). *Compare* the attacks against such statutes *on their faces* in Lewis v. State, 86 Nev. 889, 478 P.2d 168 (1970); State v. Doyal, 59 N.M. 454, 286 P.2d 306 (1955); People v. Fields, 30 Mich.App. 390, 186 N.W.2d 15 (1971); In re Correia, *supra.*

waiver decisions. In *Kent* the Supreme Court observed:

> "Meaningful review requires that the reviewing court should review. It should not be remitted to assumptions. It must have before it a statement of the reasons motivating the waiver including, of course, a statement of the relevant facts." [33]

Because the propriety of the waiver in *Kent* was not considered on its merits, the Supreme Court did not undertake to define the appropriate criteria. Consequently, the state courts, when the discretionary waiver statutes of their respective jurisdictions are subjected to constitutional challenge, must fashion the controlling criteria.[34]

▆▆▆ From the most significant factors identified by investigations reported in distinguished law reviews,[35] the areas of consensus among juvenile court judges may be discerned. Jurisdiction ordinarily is waived when (1) the defendant has acquired such a degree of emotional or mental maturity that he is not receptive to rehabilitative programs designed for children; (2) although the defendant is immature, his disturbance has eluded exhaustive prior efforts at correction through existing juvenile programs; or (3) the defendant is immature and might be treated, but the nature of his difficulty is likely to render him dangerous to the public, if released at age twenty-one, or to disrupt the rehabilitation of other children in the program prior to his release.[36] These areas of consensus provide flexible but definite criteria for waiver of jurisdiction. Each criterion requires that the child's potential for rehabilitation be evaluated in terms of his present state of development and the availability of facilities, programs and personnel capable of providing effective individualized treatment.[37]

▆▆▆ Application of the criteria to the instant case reveals the inadequacy of the magistrate's "investigation" prior to waiving jurisdiction. The record discloses nothing concerning Gary's mental and emotional development beyond an oblique reference to "family-wise" counseling. The record reveals no inquiry into the availability of facilities, programs and personnel, under juvenile court jurisdiction, capable of affording Gary the kind of rehabilitative care that he requires. The record does contain a description of the offenses alleged and a vague reference to previous offenses. The nature of alleged and past offenses is relevant to the question of the defendant's present state of development; but, standing alone, it fails to

---

33. 383 U.S., at 561, 86 S.Ct., at 1057.

34. *See* Knott v. Langlois, 102 R.I. 517, 231 A.2d 767 (R.I.1967).

35. *See* Note, Juvenile Delinquents: The Police State Courts and Individualized Justice, 79 Harv.L.Rev. 775, 793 (1966); Note, Rights and Rehabilitation in the Juvenile Courts, 67 Colum.L.Rev. 281, 310 (1967); Note, Waiver of Jurisdiction in Wisconsin Juvenile Courts, 1968 Wis.L. Rev. 551 (1968); Comment, Criminal Offenders in the Juvenile Court (U.Pa.L. Rev.) *supra*, note 6, at 1206. *Compare* Note, Certification of Minors to the Juvenile Court: An Empirical Study, 8 San Diego L.Rev. 404 (1971) (discussing transfer of youths from criminal courts to juvenile courts).

36. These general criteria embody the major provisions of the ambitious new court rules and statutes establishing controlling criteria in Michigan, Maryland and Texas. Supreme Court of Michigan, Juvenile Court Rules of 1969, Rule 11, "Waiver of Jurisdiction," 381 Mich., at cxxxiii (1969); Maryland Code, art. 26, § 70–16; Vernon's Tex.Stat. art. 2338–1, § 6(h). More importantly, they conform fully to the Idaho legislature's emphasis on rehabilitation as the fundamental purpose of the Y.R.A. Of course, the criteria for waiver, like waiver itself, may be vulnerable to criticism. *See*, e.g., Sargent & Gordon, Waiver of Jurisdiction: An Evaluation of the Process in the Juvenile Court, 9 Crime & Delinquency 121 (1968). If so, they may be adjusted when the need becomes manifest. Our object is not to rigidify the discretionary waiver decision; rather, it is to guide the sound exercise of that discretion in order to implement the legislative purpose and to protect the waiver process from constitutional infirmity.

37. *See* Croxton, The Kent Case and Its Consequence, 7 J.Fam.L. 1, 8–10 (1967).

establish sufficient grounds for waiving jurisdiction.[38] A valid waiver must be based on a specific finding, supported by substantial and competent evidence obtained in the "full investigation" required by statute, that the defendant is not amenable to rehabilitative treatment under juvenile court jurisdiction.[39]

The "orders" waiving jurisdiction must be vacated. The "decrees" finding Gary to be within the purview of the Y.R.A. are also vacated, for reasons earlier stated. In light of Gary's present age (18), the case is remanded only for further findings pertinent to waiver. If no basis for a valid waiver consistent with this opinion can be established, the petitions should be dismissed.[40]

Costs to appellant.

McFADDEN, DONALDSON, and SHEPARD, JJ., and SCOGGIN, D. J., concur.

---

38. People v. Brown, 13 Cal.App.3d 876, 91 Cal.Rptr. 904 (1971); Richerson v. Superior Court, 264 Cal.App.2d 729, 70 Cal.Rptr. 350 (1968); State v. Weidner, 487 P.2d 1385 (Or.App.1971). *Compare* Stapler v. State, 273 Ala. 358, 141 So.2d 181 (1962).

39. Hazell v. State, 12 Md.App. 144, 277 A.2d 639 (1971); United States v. Howard, 146 U.S.App.D.C. 10, 449 F.2d 1086 (1971); Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970).

40. *See* Knott v. Langlois, *supra* note 34.