PEOPLE v SCHUMACHER

1. APPEAL AND ERROR—CRIMINAL LAW—PLEA OF GUILTY—JURISDIC-
   TIONAL DEFECTS—WAIVER.

   A defendant who pleads guilty does not waive his right to assert
   on appeal a jurisdictional defect in the proceedings below.

2. APPEAL AND ERROR—PROBATE COURTS—INFANTS—JUVENILE JURIS-
   DICTION—WAIVER—JUDGE'S FINDINGS—AMENABILITY TO TREAT-
   MENT—NATURE OF DIFFICULTY—SERIOUSNESS OF OFFENSE.

   A probate court order waiving jurisdiction of a juvenile defendant
   to a criminal court and binding him over for criminal prosecu-
   tion will be affirmed on appeal where the judge's findings,
   based upon substantial evidence and upon thorough investiga-
   tion, show that the juvenile is not amenable to treatment, or
   that despite his potential for treatment, the nature of his
   difficulty is likely to render him dangerous to the public if he is
   released at age nineteen or likely to disrupt the rehabilitation
   of other children in the juvenile program prior to his release;
   however, the seriousness of the offense committed may not
   alone be used to determine the likelihood that a potentially
   amenable juvenile will endanger the public or other children in
   the rehabilitation program.

3. INFANTS—COURTS—WAIVER OF JURISDICTION—EVIDENCE—SUITABIL-
   ITY OF PROGRAMS—JUDICIAL NOTICE.

   A probate court judge must specifically place evidence on the
   record at hearings for the waiver of jurisdiction over a juvenile
   to a criminal court held after May 4, 1977, regarding the
   relative suitability of programs and rehabilitation facilities
   available to the juvenile and criminal courts before granting
   waiver; judicial notice of available rehabilitative facilities will
   not be satisfactory.

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 4 Am Jur 2d, Appeal and Error § 271.

   5 Am Jur 2d, Appeal and Error § 656.

[2–4] 47 Am Jur 2d, Juvenile Courts and Delinquent and Dependent
   Children § 19.

4. Appeal and Error—Infants—Juvenile Waiver—Inherent De-
   lay—Juvenile's Interests—Rehabilitation.

   The delay inherent in the present appeal procedure from proceed-
   ings for the waiver of jurisdiction over a juvenile by a probate
   court to the criminal courts satisfies neither the interests of
   justice nor the juvenile's interests in rehabilitation.

Appeal from Lenawee, Rex B. Martin, J. Submit-
ted February 1, 1977, at Lansing. (Docket No.
29217.) Decided May 4, 1977.

Brent Schumacher was convicted, on his plea of
guilty, of armed robbery. Defendant appeals. Af-
firmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Harvey A. Ko-
selka,* Prosecuting Attorney, for the people.

*Baker, Durst, Marr & Nelson,* for defendant on
appeal.

Before: D. C. Riley, P. J., and T. M. Burns and
Beasley, JJ.

D. C. Riley, P. J. From a plea-based conviction and
a subsequent 5-1/2 to 35 year sentence on a charge
of armed robbery, MCLA 750.529; MSA 28.797,
defendant Brent Schumacher appeals. As a result
of his plea, the prosecutor dropped two other
charges: larceny in a building, MCLA 750.360;
MSA 28.592, and assault with a deadly weapon,
MCLA 750.82; MSA 28.277. At the time of the
events giving rise to these charges, defendant was
16 years old; at plea-taking, 17; and today, 18.

Some months prior to defendant's plea, the Pro-
bate Court of Lenawee County held two hearings,
at the instance of the prosecutor, to determine

whether there existed probable cause to believe that defendant committed the charged offenses, MCLA 712A.4(3); MSA 27.3178(598.4)(3), JCR 1969, 11.1(a)(Phase 1), and whether the interests of defendant and the public would best be served by waiving jurisdiction to the criminal court, MCLA 712A.4(4); MSA 27.3178(598.4)(4), JCR 1969, 11.1(b)(Phase 2). On May 7, 1975, the probate court issued its findings of fact and conclusions of law; it ruled that jurisdiction over defendant be waived to the Lenawee Circuit Court.

Defendant appealed this decision to the circuit court pursuant to statute, MCLA 712A.22, 701.45a; MSA 27.3178(598.22), 27.3178(45.1). The circuit judge, functioning as a reviewing court, affirmed the order of waiver in a written opinion dated August 8, 1975. Defendant applied for interlocutory leave to appeal the waiver, MCLA 701.45a(3); MSA 27.3178(45.1)(3), but a panel of this Court denied same on December 12, 1975.

On appeal of his criminal conviction, defendant contends that the probate court erred in waiving jurisdiction since the record did not support the conclusion that defendant's and the public's interests would best be served by the waiver. The prosecutor responds that a bargained plea of guilty forecloses our review of the alleged error. We do not agree. In pleading guilty, defendant did not relinquish his right to assert a jurisdictional defect in the proceedings below. See *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), and *People v Alvin Johnson,* 396 Mich 424; 240 NW2d 729 (1976). Compare *People v Mahone,* 75 Mich App 407; 254 NW2d 907 (1977).[1]

---

[1] We do not rule that defendant was required first to appeal the waiver order interlocutorily, before an appeal of right from his conviction would lie.

## I.

The activities bringing defendant to our attention arose on or about February 9th to 11th, 1975, during which defendant, emboldened by alcohol, marijuana and THC (tetrahydrocannabinols), engaged in what can only be termed a crime spree. In the course of these few days, defendant broke into and vandalized a dwelling, causing damage estimated at $4,000. Along with another minor and two young adults, defendant planned and perpetrated an armed robbery of a grocery store in which defendant, using the butt end of a sawed-off pool cue, bludgeoned a 72-year-old store clerk with a blow to the skull and to the rib cage. The victim survived, but his injuries are permanent. In fleeing the store, the two minors sped off in the victim's car, later rejoining their adult confederates, after abandoning the vehicle a few miles away.

Prior to these incidents, defendant led a life only occasionally spotted by brushes with the authorities. While some of his disciplinary problems were trivial (e.g., truancy, cigarette smoking during recess), others were more serious. The principal from defendant's former high school testified that he had once suspended defendant for fighting with other students. In addition, defendant's companions testified that defendant had on occasion displayed a revolver on school grounds, threatening to use it to shoot out tires or to deal with a person named Jim. At other times, defendant discussed with his friends various plans to rob a gas station or store. Most of his associates, however, discounted defendant's criminal ambitions as mere braggadocio designed to impress his peers. Notwithstanding this view of defendant, the record reflects that on the day following his attack on the

elderly clerk, defendant confided to another that he had " 'cold cocked' the old man". Also, he expressed little remorse, complained that he had gotten no money from the venture, and talked of robbing another store after the heat died down.

At Phase 2 of the waiver hearing, defendant's counsel presented, *inter alia,* three expert witnesses who testified, with varying degrees of certainty, that they believed defendant was not beyond rehabilitation within existing juvenile programs. When asked about defendant's prospects for improvement if he were to be treated within the adult penal system, two of the experts refused to comment since their familiarity with adult programs was either nonexistent or based on hearsay. The third expert, claiming an awareness of prison programs in a number of states, including Michigan, opined that defendant would be irretrievably damaged if sent to prison. However, this witness did not elaborate on the specific rehabilitative programs in Michigan for juveniles imprisoned as adults.

## II.

As a prologue to our resolution of the issue asserted on appeal, we must first address a more basic question. Specifically, what is the standard of review in deciding whether waiver is proper? On this issue, MCLA 712A.4; MSA 27.3178(598.4) and JCR 1969, 11 offer but a glimmer of insight. As noted, the probate court must canvass certain stated criteria in order to determine whether the interests of the juvenile and the public would be served *best* by granting a waiver of jurisdiction. Moreover, MCLA 712A.1; MSA 27.3178(598.1), provides in part:

"Proceedings under [the juvenile code] shall not be deemed to be criminal proceedings.

"This chapter shall be liberally construed to the end that each child coming within the jurisdiction of the court shall receive such care, guidance and control, preferably in his own home, as will be conducive to the child's welfare and the best interest of the state and that when such a child is removed from the control of his parents the court shall secure for him care as nearly as possible equivalent to the care which should have been given to him by them."

It is noteworthy that the Legislature, in amending MCLA 712A.4; MSA 27.3178(598.4), left untouched the quoted provision calling for liberal construction of the juvenile code under proceedings characterized as noncriminal in nature.

Of the recent Michigan cases considering JCR 1969, 11 and approving juvenile waivers to the criminal courts, *People v Jackson,* 46 Mich App 764; 208 NW2d 526 (1973), *People v Rubin Williams,* 50 Mich App 270; 213 NW2d 307 (1973), *People v White,* 51 Mich App 1; 214 NW2d 326 (1973), *lv den,* 391 Mich 819 (1974), *People v Samuels,* 62 Mich App 214; 233 NW2d 520 (1975), *People v Ringstaff (On Remand),* 64 Mich App 638; 236 NW2d 728 (1975), and *People v Peters,* 397 Mich 360; 244 NW2d 898 (1976), only *Rubin Williams* and *White, supra,* offer guidance on the appropriate standard of review. While *Rubin Williams, supra* at 277, held that the recorded testimony "adequately support[ed]" the waiver order, and while *White, supra* at 6, found the waiver order "not clearly erroneous" in light of the record, those cases are somewhat in doubt since they did not consider the requirement that the probate court supply written findings supporting its decision to waive. MCLA 712A.4(7); MSA

27.3178(598.4)(7), JCR 1969, 11.6, *People v Mahone, supra.*

A survey of other jurisdictions for an appellate standard of review discloses that some courts affirm waiver "where a preponderance of the legally sufficient evidence shows that such a determination is proper in light of the factors to be considered" under the relevant waiver statute. *Hazell v State,* 12 Md App 144, 154; 277 A2d 639, 644 (1971). See also, *In re Barker,* 17 Md App 714, 721; 305 A2d 211, 215 (1973). Other courts have held that waiver is proper only where "substantial evidence" is adduced showing that the minor is not amenable to treatment within the juvenile system. *Jimmy H v Superior Court of Los Angeles County,* 3 Cal 3d 709, 715; 91 Cal Rptr 600, 603; 478 P2d 32, 35 (1970), *State v Gibbs,* 94 Idaho 908, 916; 500 P2d 209, 218 (1972), *In re Patterson,* 210 Kan 245, 250; 499 P2d 1131, 1135 (1972).

Although our statute and court rule do not speak in terms of "amenability", we discern within them an intention that the juvenile's prospects for rehabilitation be seriously considered. Otherwise, our duty of liberal construction, aimed at providing care, guidance and control similar to that provided by the child's parents, would have little meaning in the instant setting. Similarly, the mandate that the probate court consider whether the child's and the public's interest are *best* served by waiver would truly be hollow if rehabilitative potential were not seriously weighed.

On the other hand, we would be blind indeed were we to overlook the clear solicitude expressed by court rule and statute concerning the public security and welfare. See JCR 11.1(b)(5) and MCLA 712A.4(4)(e); MSA 27.3178(598.4)(4)(e).

Accordingly, we hold that an order waiving

jurisdiction will be affirmed whenever the judge's findings, based upon substantial evidence and upon thorough investigation, show either that the juvenile is not amenable to treatment, or, that despite his potential for treatment, "the nature of his difficulty is likely to render him dangerous to the public, if released at age [nineteen],[2] or to disrupt the rehabilitation of other children in the program prior to his release". *People v Fields (On Rehearing)*, 391 Mich 206, 242, 216 NW2d 51 fn 13; (1974) (LEVIN, J., *dissenting)*, quoting *State v Gibbs, supra.*[3]

We believe this holding hews a close line between the often competing interests of the juvenile and society. We emphasize, however, that the "seriousness of the offense", MCLA 712A.4(4)(b); MSA 27.3178(598.4)(4)(b), JCR 1969, 11.1(b)(2), may not alone be used to determine the likelihood that a potentially amenable juvenile will endanger the public or other children in a rehabilitation program. *State v Gibbs, supra,* 94 Idaho at 917; 500 P2d at 217–218, *In re Patterson, supra,* 210 Kan at 250; 499 P2d at 1135–1136, *In re Stevenson,* 167 Mont 220, 228; 538 P2d 5, 9 (1975). The Legislature and the Supreme Court have indicated by statute and rule, respectively, that all of the waiver criteria shall be considered; thus, no reason appears why the "seriousness of the offense" should gain preeminence over other factors to be assessed.

---

[2] According to the original quotation from *State v Gibbs,* the age at which juvenile jurisdiction ceases is 21. The corresponding age in Michigan is 19. *See* MCLA 712A.2a(1), 712A.2; MSA 27.3178(598.2a)(1), 27.3178(598.2).

[3] In *People v Peters,* 397 Mich 360; 244 NW2d 898 (1976), the Supreme Court expressed disapproval with the majority opinion in *People v Fields (On Rehearing),* 391 Mich 206; 216 NW2d 51 (1974), and espoused, at least in part, Justice LEVIN's dissenting opinion.

## III.

Defendant contends that the probate court allowed the "seriousness of the offense" to obscure the other factors which must be considered under the statute. A reading of the court's findings of fact deflates defendant's charge, for the court dwelled at length on each statutory criterion. Although we are not convinced that substantial evidence pointed to the conclusion that defendant would be unamenable to treatment as a juvenile, we do find a similar quantum of proof showing it likely that defendant would pose a threat to society if released at nineteen. Defendant's planning of assaultive crimes had escalated beyond the discussion stage; indeed, even after the near-fatal attack on the clerk, defendant considered robbing another store. Taking these facts together with the heinousness of the offenses defendant admitted committing, we sustain the waiver of defendant for adult prosecution, and hence affirm his conviction.

In so doing, however, we choose to comment on one of the statutory factors to be weighed before waiver can occur, namely, "the relative suitability of programs and facilities available to the juvenile and criminal courts for the child". MCLA 712A.4(4)(d); MSA 27.3178(598.4)(4)(d), JCR 1969, 11.1(b)(5). In considering this factor the probate court indicated:

"The Juvenile programs can legally be continued at most until age 19, but the available programs are not useful or effective, except in cases of exceptionally immature youth for very long after age 17, and furthermore there is no long term Juvenile detention placement that would be adequate to assure that said Brent Schumacher would not escape into society. On the other hand, the adult Courts do have places where Brent Schumacher can be confined for as long as necessary

and still receive attention toward his rehabilitation and return to society. These programs in the Criminal Courts can continue indefinitely."

The record, however, discloses no testimony showing that juvenile programs are typically unsuccessful for juveniles over 17; nor does the record reveal proofs regarding the relative suitability of adult programs. Were it not for *People v White, supra* at 4–6, which held that a probate court may judicially notice available rehabilitative facilities, we would be inclined to find wanting the court's compliance with subsection (d). *Cf.,* Rule 201, Proposed Michigan Rules of Evidence, Michigan Court Rules Supplemental Pamphlet (West Pub, 1977). However, since existing precedent supported a finding based on judicial notice and since, as noted, substantial evidence showed that defendant posed a likely threat to public security, we decline to disturb the waiver. We hold, though, that for waiver hearings held after the decision date of this opinion, there must be evidence on the record, to which the probate judge must specifically refer, regarding the "relative suitability of programs and facilities available to the juvenile and criminal courts for the child". This holding poses no inordinate burden on the administration of justice; rather, it enforces the statutory command that all criteria be considered. Moreover, under 1975 PA 280 (MCLA 722.801 *et seq.;* MSA 25.243(11) *et seq.),* the Juvenile Justice Services Act, access to information regarding the relative suitability of adult and juvenile programs of rehabilitation should become readily available, thus largely alleviating whatever difficulty subsection (d) imposes.

## IV.

Before closing, we believe it propitious to urge

the Legislature and the Supreme Court to consider, respectively, the promulgation of a statute or court rule which would accelerate the appeal procedure (beyond the acceleration already permitted[4]) for orders waiving jurisdiction. The inexorable passage of time and the often ponderous workings of our legal system make an improvident waiver to criminal court all but irremediable. In the present case, defendant followed every legitimate step as prescribed by statute to appeal the waiver. Nonetheless, approximately two years have passed since the waiver hearings took place; in fact, the length of time would have been greater had defendant exercised his right to trial.

If defendant's arguments had been meritorious, we would then have been faced with the bitter choice of releasing outright a person who has inflicted, and may again inflict, harm on the community, or of remanding for a reconstructed waiver hearing, *nunc pro tunc*. See Note, *Review of Improper Juvenile Transfer Hearings*, 60 Va L Rev 818, 825–832 (1974). Clearly, a choice such as this satisfies neither the interests of justice nor the juvenile's interest in rehabilitation. Hence, we urge a revision hastening the time for appealing a waiver so that an erroneous order can be quickly corrected and a proper order swiftly approved.

Affirmed.

---

[4] *See* GCR 1963, 816.6. *See also* Proposed Amendments to GCR 1963, 816.6 and 803 (released April 12, 1977).