PEOPLE v NELSON

Docket Nos. 91450, 94482. Submitted February 11, 1987, at Detroit. Decided June 6, 1988.

The Wayne County Probate Court, Juvenile Division, held hearings to determine whether there existed probable cause to believe that defendant, Eddie Nelson, a minor, committed two counts of assault with intent to murder, one count of armed robbery, one count of assault with intent to rob while armed, and one count of possession of a firearm during the commission of a felony. The court also sought to determine whether the interests of defendant and the public would best be served by waiving jurisdiction to the circuit court. The probate court, Paul R. Mahinske, J., ruled that jurisdiction over defendant be waived to circuit court. Trial commenced in the Wayne Circuit Court on February 6, 1986. On February 10, 1986, defendant filed an appeal in the Wayne Circuit Court challenging the probate court's waiver of jurisdiction. During the pendency of this appeal, defendant was tried on all counts, found guilty by a jury, and sentenced by the trial court, James E. Mies, J., to imprisonment. Thereafter, on August 4, 1986, the circuit court, Lucile A. Watts, J., entered an order reversing the probate court's decision to waive jurisdiction. The people appeal by leave granted, Docket No. 94482, from the circuit court's order reversing the probate court's decision waiving jurisdiction over the defendant to the circuit court. Defendant appeals as of right, Docket No. 91450, from his convictions by the jury. The appeals were consolidated.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Criminal Law § 166.

Am Jur 2d, Juvenile Courts and Delinquent and Dependent Children §§ 16 *et seq.*

Possibility of rehabilitation as affecting whether juvenile offender should be tried as adult. 22 ALR4th 1162.

Comment Note.—Necessity and sufficiency of independent evidence of conspiracy to allow admission of extrajudicial statements of coconspirators. 46 ALR3d 1148.

Age of child at time of alleged offense or delinquency, or at time of legal proceedings, as criterion of jurisdiction of juvenile court. 89 ALR2d 506.

1. Defendant lacked a prior criminal record, thus, the instant offense could not be part of a repetitive pattern of offenses. The probate court's finding to the contrary was clearly erroneous, but such error does not warrant reversal of the decision to waive jurisdiction. The circuit court, in deciding to reverse the probate court's decision waiving jurisdiction, erred in relying on a factually distinguishable Massachusetts case. The circuit court also committed clear error when it found that the probate court made inadequate findings on the relative suitability of programs and facilities available to the juvenile and criminal courts for the child. The probate court did not err in finding that the juvenile facilities were not able to provide the treatment required by defendant. The probate court correctly found that society's protection required waiver.

2. The testimony in circuit court by one of the victims regarding the seriousness of her injuries was admissible. Also admissible was testimony by a witness regarding a statement by defendant or his accomplice which showed that there existed a concert of action between defendant and his accomplice and that the statement was made while the common plan was in effect.

3. Defense counsel did not provide ineffective assistance of counsel.

The circuit court's order vacating the probate court's waiver order is reversed and the probate court's order of waiver of jurisdiction is reinstated. The defendant's convictions are affirmed.

1. Courts — Juvenile Courts — Infants — Waiver of Jurisdiction.

The probate court in the county wherein an offense allegedly occurred may waive jurisdiction over a minor upon motion of the prosecuting attorney when the child has reached the age of fifteen and has been accused of any act the nature of which constitutes a felony if committed by an adult; five criteria, with no one given preeminence over the others, must be considered: (1) the prior record and character of the child, his physical and mental maturity and pattern of living, (2) the seriousness of the offense, (3) whether the offense, even if less serious, is part of a repetitive pattern of offenses which would lead to a determination that the child may be beyond rehabilitation under existing juvenile programs and statutory procedures, (4) the relative suitability of programs and facilities available to the juvenile and criminal courts for the child, and (5) whether it is in the best interests of the public welfare and the protection of the

public security that the child stand trial as an adult offender (MCL 712A.4, subds [1] and [4]; MSA 27.3178[598.4], subds [1] and [4]).

2. APPEAL — COURTS — JUVENILE COURTS — INFANTS — WAIVER OF JURISDICTION.

An order by a probate court waiving jurisdiction over a minor to a circuit court will be affirmed on appeal whenever the probate court's findings, based upon substantial evidence and thorough investigation, show either that the juvenile is not amenable to treatment or that, despite his potential for treatment, the nature of his difficulty is likely to render him dangerous to the public, if released at age nineteen, or to disrupt the rehabilitation of other children in the program prior to his release.

3. COURTS — JUVENILE COURTS — INFANTS — WAIVER OF JURISDICTION.

A probate court, in determining whether jurisdiction over a minor should be waived to a circuit court, must refer to evidence on the record regarding the relative suitability of the programs and facilities available in the juvenile and adult correctional systems; the probate court's findings of fact must be sufficiently specific for meaningful appellate review (MCL 712A.4[1]; MSA 27.3178[598.4][1]).

4. CRIMINAL LAW — ADMISSIONS — ACCOMPLICES.

Admissions and statements of an accomplice are admissible against a defendant if there exists a concert of action between the defendant and the accomplice and the statements are made while the common scheme or plan is still in effect.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

*Joel M. Dorf,* in Docket No. 91450, and *Neil A. McQuarrie,* in Docket No. 94482, for defendant.

Before: SHEPHERD, P.J., and GRIBBS and R. R. LAMB,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

R. R. Lamb, J. In this consolidated appeal, the people appeal by leave granted from a Wayne Circuit Court order reversing a Wayne County Probate Court, Juvenile Division, decision waiving jurisdiction over the minor defendant to the circuit court. Defendant appeals as of right from his Wayne Circuit Court jury convictions on two counts of assault with intent to murder, MCL 750.83; MSA 28.278, one count of armed robbery, MCL 750.529; MSA 28.797, one count of assault with intent to rob while armed, MCL 750.89; MSA 28.284, and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). We reverse the circuit court's finding of improper waiver, reinstate the order of waiver and affirm defendant's convictions.

On August 22, 1985, at approximately 11:30 P.M., defendant, then sixteen years old, and a companion, then fourteen years old, forced their way at gunpoint into a Taco Plaza restaurant located in Dearborn Heights. Once inside the restaurant, defendant and his companion encountered store employees Karen Kuderick and Cheryl Godfrey and Godfrey's boyfriend, Keith Cummings. Defendant, with sawed-off shotgun in hand, herded the three into a small office where the store's safe was located. There, Kuderick and Godfrey were ordered to open the safe. While Kuderick was attempting to do so, the gun discharged, wounding Godfrey and Cummings. The robbers then fled with Kuderick's purse. They later turned themselves in to the authorities.

Prior to trial, the Wayne County Probate Court, Juvenile Division, held two hearings to determine whether there existed probable cause to believe that defendant committed the charged offenses, MCL 712A.4(3); MSA 27.3178(598.4)(3); MCR 5.950(B)(1), and whether the interests of defendant

and the public would best be served by waiving jurisdiction to the circuit court, MCL 712A.4(4); MSA 27.3178(598.4)(4); MCR 5.950(B)(2). On November 19, 1985, the probate court issued its findings of fact and conclusions of law; it ruled that jurisdiction over defendant be waived to circuit court.

Trial commenced in circuit court on February 6, 1986. On February 10, 1986, defendant filed an appeal in the Wayne Circuit Court challenging the probate court's waiver of jurisdiction. During the pendency of this appeal, defendant was tried, convicted on all counts and sentenced to twelve to twenty-five years imprisonment on each of the two assault with intent to murder convictions, five to fifteen years imprisonment on the armed robbery conviction, five to fifteen years imprisonment on the assault with intent to rob while armed conviction, and two years imprisonment on the felony-firearm conviction. Thereafter, on August 4, 1986, the circuit court entered an order reversing the probate court's decision to waive jurisdiction.

On appeal, plaintiff challenges the circuit court's finding that the probate court improperly waived its jurisdiction over defendant. When a child has reached the age of fifteen and has been accused of any act the nature of which constitutes a felony if committed by an adult, the probate court in the county wherein the offense allegedly occurred may waive jurisdiction over the minor upon motion of the prosecuting attorney. MCL 712A.4(1); MSA 27.3178(598.4)(1). Five criteria must be considered by the probate court in determining whether jurisdiction should be waived:

(a) The prior record and character of the child, his physical and mental maturity and pattern of living.

(b) The seriousness of the offense.

(c) Whether the offense, even if less serious, is part of a repetitive pattern of offenses which would lead to a determination that the child may be beyond rehabilitation under existing juvenile programs and statutory procedures.

(d) The relative suitability of programs and facilities available to the juvenile and criminal courts for the child.

(e) Whether it is in the best interests of the public welfare and the protection of the public security that the child stand trial as an adult offender. [MCL 712A.4(4); MSA 27.3178(598.4)(4). See also MCR 5.950(B)(2).]

No one criterion shall be given preeminence over the others. *People v Schumacher,* 75 Mich App 505, 512; 256 NW2d 39 (1977). An order waiving jurisdiction will be affirmed whenever the judge's findings, based upon substantial evidence and thorough investigation, show either that the juvenile is not amenable to treatment or that, despite his potential for treatment, the nature of his difficulty is likely to render him dangerous to the public, if released at age nineteen, or to disrupt the rehabilitation of other children in the program prior to his release. *People v Dunbar,* 423 Mich 380, 387; 377 NW2d 262 (1985), reh den 424 Mich 1201 (1985).

On September 18, 1985, probable cause was established by stipulation of the parties for the purpose of phase one of the waiver hearing. On November 14, 1985, the probate judge heard the testimony of two expert witnesses who had conducted a complete psychosocial background investigation of defendant. He also heard testimony of two additional expert witnesses who were familiar with the resources available in both the adult and juvenile correctional systems. Based on the testimony of these four witnesses, the probate court

found: that defendant had no prior criminal record or contact with the probate court; that defendant was physically mature but emotionally immature; that defendant's home life had been devoid of adult male leadership and guidance; that defendant's mother demonstrated a distinct lack of insight into her son's emotional development; that defendant's home life and pattern of living lacked sorely in guidance; that the offenses committed were "most serious"; that defendant planned and executed the robbery with much premeditation and deliberation in order to secure money to pay a debt owed to a drug distributor incurred through the sale of cocaine; that defendant's actions in planning and executing the robbery and his motivation to do so constituted "a repetitive pattern of offenses by a sociopathic young man well past rehabilitation under the regulatory [sic] statutory juvenile procedures and the time restraints thereon"; that facilities and programs provided by the juvenile correctional system and Department of Social Services were unsuitable to the needs of defendant; that defendant needed to participate in a structured treatment program for a period of time longer than could be offered by the juvenile correctional system; that, because of defendant's needs for extended treatment, an adult correctional facility would be better able to provide the programs and facilities needed to rehabilitate defendant; and that, in the interest of public welfare and for the protection of society, defendant must stand trial as an adult. After making these findings, the probate judge waived jurisdiction over defendant to the circuit court.

We quarrel with but one of the probate court's findings. On our review of the proceedings, it is clear to us that defendant lacked a prior criminal record. Lacking such a record, the instant offense

could not be "part of a repetitive pattern of offenses." The probate court's finding to the contrary was clearly erroneous. *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). Nevertheless, we do not believe that the probate court's error warrants reversal of its decision to waive jurisdiction. There was substantial evidence on the record that defendant's potential for rehabilitation was extremely limited and that the nature of defendant's emotional and intellectual difficulties were likely to render him dangerous to the public if he were to be released at age nineteen. As our Supreme Court pointed out in *Dunbar, supra,* pp 396-397:

> Society must be protected from dangerous individuals, but the Legislature intended that the long-term protection for society is to come from the successful rehabilitation of the juvenile. Where the prospects for a juvenile's rehabilitation are so slim that society's protection requires a waiver, waiver must be ordered.

We note that the circuit court's decision to reverse was premised on three errors. First, the circuit court misinterpreted and misapplied *A Juvenile v Commonwealth,* 380 Mass 552; 405 NE2d 143 (1980). This case does not, as asserted by the circuit judge, stand for the proposition that a transfer to adult prosecution should not be ordered for first-time juvenile offenders. Instead, we read *A Juvenile v Commonwealth, supra,* to stand, inter alia, for the proposition that the lack of a prior criminal record suggests a good prognosis for the rehabilitation of the juvenile offender. *Id.,* 380 Mass 561; 405 NE2d 149. Properly read, it is clear that the Massachusetts case is factually distinguishable from the case at hand.

Thomas Regan, a psychologist employed by the Wayne County Probate Court's Clinic for Child Study, testified that he gave numerous psychological and aptitude tests to defendant. Regan found defendant to be a passive, lethargic individual who lacks adequate verbal skills. Intellectually, defendant's IQ falls within the "slow learner" range and, therefore, defendant is considered borderline mentally retarded. His reading and mathematics skills have developed to a fourth-grade level. Even with intensive remedial help, defendant could not graduate from high school or obtain a GED. At best, defendant's reading and mathematics skills could be raised to the fifth- or sixth-grade level. He could, however, be taught a trade and thereby learn to support himself.

Regan further testified that defendant lacks the requisite emotional and personality resources to cope with everyday existence and to relate in a meaningful way to others. He believed defendant to be primarily an immature, self-centered, self-indulgent person. Defendant harbors much hostility and demonstrates a disregard for authority and social convention. His judgment is poor. He lacks the ability to empathize. Regan also testified that defendant's reality testing is impaired; he misperceives and distorts much of what he experiences. Regan described defendant's personality makeup as sociopathic. He then told the probate judge that individuals with such a personality makeup need adventure and excitement and tend to satisfy these needs through criminal activity. Based on his evaluation of defendant, he concluded that defendant lacks many of the necessary resources for successful rehabilitation. At best, Regan opined, defendant's prognosis for rehabilitation is guarded.

In light of Regan's testimony, we conclude that

the circuit court erred in relying on *A Juvenile v Commonwealth, supra.*

Second, the circuit court committed clear error when it found that the probate court made inadequate findings on factor (d), the relative suitability of programs and facilities available to the juvenile and criminal courts for the child. Our Supreme Court has held that there must be evidence on the record, to which the probate court must refer, regarding the relative suitability of the programs and facilities available in the juvenile and adult correctional systems. *Dunbar, supra,* p 388. Moreover, the probate court's findings of fact must be sufficiently specific for meaningful appellate review. *People v Mahone,* 75 Mich App 407, 413; 254 NW2d 907 (1977).

At the phase two hearing, Garry Kasenow, a parole supervisor for the Department of Corrections, testified as to the programs and facilities available if defendant was to be incarcerated in an adult correctional facility. Jennie Foster, an administrator for the Department of Social Services, testified as to the programs and facilities available if defendant was incarcerated in a juvenile correctional facility. She also testified that the juvenile programs keep the "average" juvenile offender twelve to fifteen months. Regan testified that, although the juvenile correctional facilities had programs that would prove beneficial to defendant, he believed that defendant needed to undergo rehabilitative treatment for a period of time longer than could be provided by the juvenile system. Specifically, Regan recommended a period of incarceration of three to five years. The probate judge referenced this testimony and relied upon it to support his finding that the juvenile facilities were not able to provide the treatment required by defendant. We find no error in his doing so.

Third, we disagree with the circuit court's finding that factor (e), whether the best interests of the public welfare and the protection of public security require the child to stand trial as an adult offender, does not apply on the facts of the instant case. Given defendant's sociopathic personality and the slim likelihood that defendant can be rehabilitated within the time frame available to the juvenile court system, it is clear that society's protection requires waiver. The probate court correctly found so.

Next, we turn to defendant's claims of error arising out of his criminal trial in the circuit court. Defendant raises three such claims. We find them all without merit.

Defendant first argues that allowing Cheryl Godfrey to testify as to the seriousness of her injuries was prejudicial. We find that Godfrey's testimony was admissible to show the aggravated nature of the assault. *People v Sutherland,* 104 Mich 468, 472; 62 NW 566 (1895); *People v Cope,* 18 Mich App 14; 170 NW2d 495 (1969), rev'd on other grounds 383 Mich 757 (1969).

Defendant next argues that the trial court abused its discretion when it permitted Eric Stacker to testify that he overheard defendant and defendant's accomplice talking on the night of the crime and that one of them, which one Stacker could not say, told a third party that "we're getting paid tonight." It is well settled that admissions and statements are admissible against another defendant if there exists a concert of action between the defendants and the statements are made while the common scheme or plan is still in effect. *People v Ayoub,* 150 Mich App 150, 152; 387 NW2d 848 (1985), lv den 425 Mich 868 (1986). Here, the evidence showed that there existed a concert of action between defendant and his ac-

complice and that the statement was made while the common plan was in effect. Accordingly we find that Stacker's testimony was properly admitted.

Finally, defendant argues that defense counsel's failure to file a timely appeal from the probate court's waiver of jurisdiction amounted to ineffective assistance of counsel. According to defendant, defense counsel's inaction deprived him of a substantial defense, to wit: the circuit court's lack of jurisdiction to try defendant as an adult.

In the instant case, defense counsel did appeal the waiver issue and did secure a ruling favorable to defendant. On these facts we do not find that counsel was ineffective. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977); *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Accordingly, we reverse the circuit court's decision to vacate the probate court's waiver order. We reinstate the probate court's order of waiver of jurisdiction to the criminal court. We affirm defendant's convictions.