**C O U R T   O F   A P P E A L S**

*In re* AUSTIN MATSON, Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

            Petitioner-Appellant,

v

AUSTIN MATSON,

            Respondent-Appellee.

UNPUBLISHED
October 24, 2017

No. 332780
Oakland Circuit Court
Family Division
LC No. 2015-833608-DL

---

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Respondent committed acts of second-degree criminal sexual conduct against his 2½-year-old adopted twin sisters when he was 16 years old. The twins reported the incidents three years later and the prosecution filed two CSC-2 charges against respondent. Because respondent was a minor when the offenses occurred, jurisdiction was transferred to the family division of the circuit court (the family court). The prosecution requested that the family court waive jurisdiction and allow respondent to be tried as an adult. Following a best-interest hearing, the family court denied the waiver motion. The charges were then necessarily dismissed because the family court lacked jurisdiction to try the adult respondent as a minor and punishment could not be provided in the juvenile justice system.

The prosecution now appeals, claiming that the family court abused its discretion in denying the waiver motion as respondent admitted his culpability for charges of a serious sexual offense that were subsequently dismissed. The family court's discretion reflects a thoughtful and thorough review of the factors relevant to its jurisdictional determination. We discern no abuse of discretion and affirm.

I.

Respondent sexually touched his sisters on three occasions when they were toddlers and he was 16. When the twins were approximately 5½, one "nonchalant[ly]" told her father (respondent's stepfather) that respondent had touched her and her sister in a sexual manner. The children's mother, Leanne Swan, "separated respondent from the girls and immediately placed

-1-

respondent in counseling." Swan took the twins to Care House where trained professionals conducted a forensic interview. The interviewer recommended that Swan place the girls in counseling. Although Swan had noticed no difference in her daughters' behavior, she complied.

The prosecution filed two CSC-2 charges against respondent three months later. He was then 19 years old. Generally, the family division of the circuit court has exclusive jurisdiction over juveniles under 17 years old who have committed criminal offenses. MCL 712A.2(a)(1); *People v Conat*, 238 Mich App 134, 139; 605 NW2d 49 (1999). There are certain "specified juvenile violation[s]" over which the circuit court has automatic jurisdiction. MCL 600.606; *Conat*, 238 Mich App at 142-143. CSC-2 as proscribed by MCL 750.520c is not one of these specified juvenile violations. *Id*.

As required by MCL 712A.3(1),[1] the matter was transferred to the family division of the Oakland Circuit Court once the criminal division learned that respondent was under the age of 17 when the offenses were committed. The prosecution then requested that the family court waive jurisdiction so respondent could be tried as an adult. See MCL 712A.4(1) ("If a juvenile 14 years of age or older is accused of an act that if committed by an adult would be a felony, the judge of the family division . . . may waive jurisdiction under this section upon motion of the prosecuting attorney."); MCR 3.950(A)-(C) (granting family court judges sole authority to waive jurisdiction in juvenile matters upon motion by the prosecution). As respondent was then an adult, the family court did not have jurisdiction to adjudicate him delinquent, but retained jurisdiction "for the limited purpose of holding a waiver hearing pursuant to MCL 712A.4." *People v Schneider*, 119 Mich App 480, 486; 326 NW2d 416 (1982).

Waiver hearings are comprised of two phases. In the first, the family court must conduct a hearing "to determine whether there is probable cause to believe that an offense has been committed that if committed by an adult would be a felony" and that the respondent "committed the offense." MCR 3.950(D)(1). See also MCL 712A.4(3). Respondent admitted that he sexually touched his young sisters and that his acts would be deemed a felony had he committed them as an adult, thereby waiving the probable cause hearing. MCL 712A.4(3); MCR 3.950(D)(1)(c)(ii).

During the second phase, the family court must conduct a hearing "to determine whether the interests of the juvenile and the public would best be served by granting the [waiver] motion." MCR 3.950(D)(2). See also MCL 712A.4(4). The prosecution must establish by a preponderance of the evidence "that the best interests of the juvenile and the public would be served by waiver." MCR 3.950(D)(2)(c). The Legislature has directed family courts to consider certain criteria at this phase, and to give certain criteria greater weight:

---

[1] The statute provides, in relevant part: "If during the pendency of a criminal charge against a person in any other court it is ascertained that the person was under the age of 17 at the time of the commission of the offense, the other court shall transfer the case without delay . . . to the family division of the circuit court . . . ."

In making its determination, the court shall consider all of the following criteria, giving greater weight to the seriousness of the alleged offense and the juvenile's prior record of delinquency than to the other criteria:

(a) The seriousness of the alleged offense in terms of community protection, including, but not limited to, the existence of any aggravating factors recognized by the sentencing guidelines, the use of a firearm or other dangerous weapon, and the impact on any victim.

(b) The culpability of the juvenile in committing the alleged offense, including, but not limited to, the level of the juvenile's participation in planning and carrying out the offense and the existence of any aggravating or mitigating factors recognized by the sentencing guidelines.

(c) The juvenile's prior record of delinquency including, but not limited to, any record of detention, any police record, any school record, or any other evidence indicating prior delinquent behavior.

(d) The juvenile's programming history, including, but not limited to, the juvenile's past willingness to participate meaningfully in available programming.

(e) The adequacy of the punishment or programming available in the juvenile justice system.

(f) The dispositional options available for the juvenile. [MCL 712A.4(4); see also MCR 3.950(2)(d).]

Despite that the burden was on the prosecutor at the waiver hearing, the prosecutor called no witnesses. Defense counsel called and directly examined the only witnesses who provided evidence to the family court. Swan testified that all three children had been in counseling since her daughter's report and that respondent had been separated from his sisters. After that time, Swan mostly spoke to respondent on the telephone. Accordingly, Swan did not have first-hand knowledge that her son was in counseling, but she "underst[oo]d" he was still attending. She described that respondent was a good student who had graduated from high school with honors and was doing very well in his courses at community college. She offered that respondent had "always been a good child" and had not been in any trouble since these incidents. However, Swan admitted that even with counseling, she would not feel safe leaving her daughters alone with respondent.

John Neumann was court appointed to evaluate respondent but is not respondent's therapist. The court qualified Neumann as an expert in the field of child sexual abuse offenders. Neumann believed respondent was in the "borderline low moderate risk . . . for recidivism." "[W]ith the treatment he had had up to that point," Neumann found that respondent had already "start[ed] internalizing his issues and bringing resolution to his offending behaviors." Neumann took into consideration that respondent no longer had contact with his sisters or any other "potential victims," i.e., young children who "could've been vulnerable to any forms of offensive behavior." The three-year offense-free gap since respondent's acts was also relevant to Neumann's assessment and "significantly" reduced respondent's recidivism risk. "[I]f

[respondent] consistently continued to invest in his ongoing treatment," Neumann opined, his recidivism risk "would continue to lower and bring resolution to his issue." Neumann described the voluntary treatment options available in respondent's community as "cutting edge." Neumann also testified that respondent "told me his intent was to continue" therapy and treatment.

Neumann further opined that respondent was not sexually deviant or a pedophile. He "assum[ed]" respondent was "very, very immature both socially and emotionally" at the time of his offenses, leaving "gaps in his areas of boundaries and parameters . . . for him to engage and act out in this way." By the time of the hearing, respondent was 20 years old. He could then "differentiate the difference between right and wrong." Because of his increased maturity, respondent was able "to integrate and pull together various pieces of his behavior and what led him . . . to sexually act out." The offenses ultimately "were a result of his then immaturity and use of pornography and were opportunistic," without "any foundations of predatory, pedophilia or severe deviant sexual pathology."

On cross-examination by the prosecution, Neumann conceded that the victims of child sexual abuse can be impacted for life and may even become sexual predators themselves. Neumann agreed that "one of the troubling factors" in this case was the familial relation between respondent and his victims. And Neumann accepted that respondent's expression of guilt and remorse did not necessarily mean that he would not reoffend.

In closing, the prosecution emphasized the seriousness of the crime and the lack of punishment available if waiver were denied. Respondent countered that despite the severity of his offense, he had voluntarily participated in counseling, had a strong family support system, and had a low potential for recidivism, supporting waiver of family court jurisdiction and dismissal of the charges.

The family court considered the matter for three months before denying the prosecution's motion to waive jurisdiction. The court acknowledged that the offenses were very serious. If respondent were convicted as an adult offender, he would face a sentence of one to 15 years' imprisonment and would be required to register as a sex offender for the rest of his life. The court further acknowledged that its denial of the motion to waive jurisdiction would result in dismissal of the charges as respondent was now an adult and the family court could not otherwise assume jurisdiction over him.

The court conceded that respondent had admitted responsibility for the offenses and that his victims were very young. But, the court reasoned, Neumann found no evidence of premeditation. Rather, Neumann opined "that the acts were a result of Respondent's immaturity, opportunity, and his use of pornography."

The court noted that respondent had no criminal history outside of the incidents underlying this action. Respondent "was a good student and had no issues in the home growing up." Following the incidents, respondent graduated from high school with honors and was an excellent student at community college. Respondent had been in voluntary counseling since his sisters reported the abuse. He expressed his intent to continue counseling even after resolution of the court proceedings. The court found that respondent "has so far been amenable and is

benefiting from counseling services." Respondent retained "strong family support" and both of his parents attended all court proceedings. Overall, respondent did "not appear to have the foundations of predatory pedophilia or severe deviant sexual pathology." And despite the lack of adequate punishment or programming in the juvenile justice system, the court emphasized that respondent would "continue to decrease his chances of recidivism with continued counseling and strong familial support, which Respondent indicated he will continue to have."

Ultimately, the court found that the only factor weighing in favor of waiving jurisdiction so respondent could be charged and prosecuted as an adult was the seriousness of the offenses. Even giving that lone factor great weight, the court did not find that it supported such waiver. The court therefore denied the prosecution's motion and the charges were dismissed.

The prosecution now appeals.

II.

We review for an abuse of discretion the family court's denial of the prosecution's motion to waive jurisdiction. See *In re Wilson*, 113 Mich App 113, 121-122; 317 NW2d 309 (1982). See also *In re Fultz*, 211 Mich App 299, 306; 535 NW2d 590 (1995), rev'd on other grounds *People v Fultz*, 453 Mich 937; 554 NW2d 725 (1996). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *People v Buie*, 491 Mich 294, 320; 817 NW2d 33 (2012). We review for clear error the court's findings of fact. MCR 2.613(C); MCR 3.902(A).

The prosecution contends that the family court improperly analyzed the criteria under MCL 712A.4(4) and "in effect . . . immunized Respondent from any prosecution whatsoever and therefore [the jurisdictional waiver denial] was an abuse of her discretion." We first address the prosecution's challenges surrounding factor (a), the seriousness of the offense.

The family court recognized the seriousness of the CSC-2 charges and the specific acts committed by respondent, as well as the punishment and reporting requirements respondent would face if tried as an adult. The prosecution contends that the court should have given this factor even greater weight than it did, "[g]iven the young age of the victims and Respondent's heinous acts of [CSC] against them." Our Legislature has considered the serious nature of several criminal offenses and requires automatic waiver to the criminal division where a juvenile over the age of 14 will be tried as an adult for committing various offenses. Automatic waiver occurs where a respondent commits first-degree CSC in violation of MCL 500.520b. The Legislature made the informed decision not to include CSC-2 in the category of offenses requiring automatic waiver under MCL 600.606. We would be ignoring the Legislature's policy decision and creating a judicial automatic waiver rule if we held that the commission of CSC-2, standing alone, rendered the offense so serious as to demand waiver of family court jurisdiction.

The prosecution further contends that caselaw supports that a family court abuses its discretion when its denial of a waiver motion leads to dismissal of the charges. We do not read the cited case in this narrow manner. In *Fultz*, 211 Mich App at 301-302, the respondent was charged seven years after the fact with committing four counts of CSC-1 against his seven-year-old niece when he was 16. The respondent allegedly handcuffed his victim to a bed and forcibly

-5-

raped her. The victim waited seven years to report the assault because the respondent threatened her. *Id*. at 302. The Legislature had yet to enact MCL 600.606 at the time the respondent was charged. Although a separate statutory provision permitted the prosecutor to proceed against the respondent as an adult, the prosecutor used his charging discretion to first file a petition in the probate court to waive its juvenile jurisdiction. *Id*. at 302-303. The probate court considered various relevant factors and declined to waive jurisdiction. As a result, the charges against the then-adult respondent were dismissed. *Id*. This Court considered the probate court's analysis of the factors underlying the waiver decision, including that the respondent had committed no offenses in the interim, and discerned no factual error or abuse of discretion. *Id*. at 306-308.

In dissent, Judge SMOLENSKI reasoned:

"The appropriate standard for purposes of a phase II hearing is 'whether the interests of the juvenile *and the public* would best be served by granting the motion [for waiver].' " In this case, the probate court found that there was probable cause to believe that respondent had forced the complainant to engage in conduct constituting four counts of [CSC-1]. Respondent was ineligible for placement at any juvenile facility because of his age. The complainant claimed that she had kept silent about respondent's alleged sexual assaults because respondent had threatened her.

Therefore, I would hold that under the circumstances of this case the probate court abused its discretion in failing to appropriately weigh the seriousness of respondent's alleged crimes, and the best interest of the public welfare and the protection of the public security. I do not believe that under these circumstances respondent should be rewarded for allegedly living a life free of crime for eight years. I would reverse the circuit court's affirmance of the probate court's order declining to waive jurisdiction, and remand. [*Id*. at 312-313 (SMOLENSKI, J., concurring in part and dissenting in part) (emphasis in original, citations omitted).]

In a 5-2 decision, the Supreme Court reversed, holding "[f]or the reasons stated by the dissenting judge in the Court of Appeals, we find the probate court abused its discretion in denying the prosecutor's motion to waive jurisdiction to the circuit court." *Fultz*, 453 Mich at 937.

*Fultz* does not stand for the proposition that a family court abuses its discretion if its refusal to waive jurisdiction results in the dismissal of the charges. Rather, the probate court in *Fultz* abused its discretion because the respondent's alleged offense was especially egregious, requiring a trial on the merits. The victim accused the respondent of holding her prisoner and restricting her movements in order to perpetrate violent acts of sexual penetration and then threatening her to secure her silence for several years. If these allegations were found true, it is very likely the respondent would still pose a danger to society. Declining to waive jurisdiction and dismissal of the charges against the respondent was therefore not in the best interests of the public.

Here, respondent's sexual touching of his sisters had not recurred and there is no allegation that he took any act to prevent his sisters from reporting the abuse. His act, although deplorable, was not violent and did not involve penetration. The court-appointed evaluator found respondent's offense to be born of immaturity and based on opportunity. And the delay in reporting bore no reflection on respondent. The circumstances do not rise to the extreme level presented in *Fultz*.

Moreover, contrary to the prosecution's insistence, the family court did assign factor (a) greater weight as directed by the Legislature. The court simply found that standing alone, even a heavily-weighted factor (a) did not tip the scales.

The prosecution also challenges the family court's conclusion that only factor (a) weighed in favor of waiver. The prosecution contends that factors (b), (e), and (f) support waiver of jurisdiction as well.

Factor (b) focuses on the culpability of the respondent, including the respondent's role in planning the offense, as well as any aggravating or mitigating factors within the sentencing guidelines. In relation to this factor, the court noted that respondent admitted that he committed the charged acts. The court focused on respondent's lack of planning, citing Neumann's testimony that the acts were crimes of opportunity stemming from respondent's immaturity and use of pornography. The court took into account that the young age of the victims was an aggravating factor.

Respondent's admission of culpability can be viewed as a positive as respondent has actively and voluntarily sought out treatment. It also weighs in respondent's favor that he lacks pathology to reoffend. Overall, despite the aggravating factor, we discern no error in the family court's analysis and weighing of factor (b).

Factor (e) considers "[t]he adequacy of the punishment or programming available in the juvenile justice system." Factor (f) is closely related, pertaining to the "dispositional options available for the juvenile." Accordingly, we consider these factors together. The court aptly noted that respondent was not eligible for any punishment or programming in the juvenile justice system, or disposition in family court, because he was 20 years old by that time. The court recognized, however, that respondent and his mother had voluntarily sought out programming for respondent outside the juvenile justice system. Respondent had then been in counseling for over a year and was showing benefit, according to Neumann's evaluation. Respondent expressed that he intended to continue therapy. So although official intervention tools did not exist, respondent was using these tools informally and was receiving the help he needed to reduce his chances of recidivism.

The prosecution strenuously argues that the absence of official punishment, programming, and dispositional options demanded the family court to waive jurisdiction so respondent could be tried as an adult. However, the prosecution misses the point of juvenile adjudications. One of the core principles underlying the reformulation of the juvenile justice system in the early 1900s was that rehabilitation should trump retribution. See *People v Hana*, 443 Mich 202, 210; 504 NW2d 166 (1993). As the United States Supreme Court reasoned in finding unconstitutional the imposition against minors of life sentences without the possibility of

parole, such adult punishments "disregard[] the possibility of rehabilitation even when the circumstances most suggest it." *Miller v Alabama*, 567 US 460, 478; 132 S Ct 2455; 183 L Ed 2d 407 (2012).

> As compared to adults, juveniles have a lack of maturity and an underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure; and their characters are not as well formed. These salient characteristics mean that it is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption. [*Graham v Florida*, 560 US 48, 68; 130 S Ct 2011; 176 L Ed 2d 825 (2010) (alterations, quotation marks, and citations omitted).]

As a result of these differences, "juveniles have lessened culpability" and "are less deserving of the most severe punishments." *Id*. Moreover, "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults," supporting rehabilitation over penalty. *Id*. (citation omitted).

Michigan's Juvenile Code embraces the idea that minors are more susceptible to change and rehabilitation. The code "must be liberally construed in order to provide each child coming within the juvenile division's jurisdiction with such care, guidance, and control as will be conducive to the child's welfare and the state's best interest." *People v Dunbar*, 423 Mich 380, 386; 377 NW2d 262 (1985). When adjudicating a juvenile, his or her " 'prospects for rehabilitation [must] be seriously considered.' " *Id*. at 387, quoting *People v Schumacher*, 75 Mich App 505, 511; 256 NW2d 39 (1977). If the juvenile's rehabilitative chances are not considered,

> "our duty of liberal construction, aimed at providing care, guidance and control similar to that provided by the child's parents, would have little meaning in the instant setting. Similarly, the mandate that the probate court consider whether the child's and the public's interest are *best* served by waiver would truly be hollow if rehabilitative potential were not seriously weighed." [*Id*., quoting *Schumacher*, 75 Mich App at 511 (emphasis in original).]

Given the rehabilitative purpose of the juvenile justice system, it is highly relevant that respondent has engaged in rehabilitative services, actually reducing his chance of recidivism according to Neumann. The prosecutor's failure to present any witnesses countering Neumann augments the reliability of Neumann's conclusions. The family court properly considered respondent's voluntary rehabilitation measures in denying the waiver motion.

The prosecution complains, however, that respondent presented no actual evidence that he was still attending counseling, such as testimony from his therapist or records of his visits. Pursuant to MCR 3.950(D)(2)(c), the burden was on the prosecution to negate the testimony of Swan and Neumann that respondent was actively participating in counseling. The burden was not on respondent to come forward with evidence supporting the denial of waiver. Given the nature of this case, we discern no error in the court's analysis of this factor.

Overall, the family court properly considered all the factors in MCL 712A.4(4). Its factual findings were not clearly erroneous given the evidence presented. Although respondent will face no official penalty or court-ordered rehabilitation, he is already on the road to remedying the cause of his offense, a result contemplated and approved by the legislatively-created jurisdictional design. Accordingly, the family court did not abuse its discretion in denying the prosecution's motion to waive jurisdiction.

We affirm.


/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher